## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-01557-DDD-STV

**DARREN PATTERSON CHRISTIAN ACADEMY**

     Plaintiff,

v.

**LISA ROY**, in her official capacity as Executive Director of the Colorado Department of Early Childhood; and

**DAWN ODEAN**, in her official capacity as Director of Colorado's Universal Preschool Program,

     Defendants.

---

### DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 2

BACKGROUND .................................................................................................... 3

LEGAL STANDARD.............................................................................................. 7

ARGUMENT .......................................................................................................... 8

I.  Plaintiff Lacks Standing. ............................................................................. 10

A.  Plaintiff lacks standing to challenge Section 26.5-4-205(2)(b), which is
captured in the "Quality Assurance Provision" of the Agreement.................. 10

B.  Plaintiff lacks standing to challenge the "Blanket Provision" (hereafter
referred to as "Contractual Provision 18(B))." ................................................ 13

II.  Plaintiff's Lawsuit Is Not Ripe. ..................................................................... 14

A.  This claim is not fit for judicial resolution because Plaintiff  bases its claim
on events that have not occurred and may never occur. ................................ 14

B.  Withholding judicial consideration of this claim imposes no hardship as
Plaintiff does not face a direct and immediate dilemma................................. 17

III.  Conclusion ..................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*303 Creative LLC v. Elenis*, 143 S.Ct. 2298 (2023).................................................... 13

*303 Creative LLC v. Elenis*, 6 F.4th 1160 (10th Cir. 2021) ........................................ 13

*Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967) .................................. 7, 8, 14, 18

*Aetna Life Ins., Co. v. Haworth*, 300 U.S. 227 (1937)................................................. 17

*Baker v. Carr,* 369 U.S. 186 (1969) ............................................................................ 8

*El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488 (1st Cir. 1992)................................. 17

*Irvine v. I.C. Sys., Inc.*, 198 F. Supp. 3d 1232 (D. Colo. 2016) .................................... 7

*Keyes v. Sch. Dist. No. 1, Denver, Colo.,* 119 F.3d 1437 (10th Cir. 1997) ................... 8

*Neiberger v. Hawkins*, 208 F.R.D. 301 (D. Colo. 2002)................................................. 8

*New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495 (10th Cir. 1995)... 7, 10, 15, 17

*Park Hospitality Association v. Department of the Interior*, 538 U.S. 803 (2003)..... 18

*Peck v. McCann,* 43 F.4th 1116 (10th Cir. 2022)............................................. 7, 10, 12

*Schaffer v. Clinton,* 240 F.3d 878 (2001)...................................................................... 8

*Sierra Club v. Yeutter*, 911 F.2d 1405 (10th Cir. 1990)........................................ 15, 17

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)...................................................... 7, 10, 11

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)..................................... 11, 12

*Texas v. United States,* 523 U.S. 296 (1998) .............................................................. 14

*United States v. Bennet*, 823 F.3d 1316 (10th Cir. 2016) .......................................... 17

**Constitutions**

U.S. Const. art. III.............................................................................................................8

**Statutes**

§ 24-4-103(8)(a), C.R.S. (2022) ........................................................................... 5

§ 26.5-1-102(1)(a), C.R.S. (2022) .......................................................................... 4

§ 26.5-1-102(1)(f), C.R.S. (2022) .......................................................................... 4

§ 26.5-1-105 (1)(a)(III), C.R.S. (2022) ................................................................. 5

§ 26.5-1-106(1)(a)(I)(A), C.R.S. (2022) ............................................................... 3

§ 26.5-1-106(1)(c), C.R.S. (2022) ......................................................................... 5

§ 26.5-4-202(1)(a)(V), C.R.S. (2022) ................................................................... 3

§ 26.5-4-202, C.R.S. (2022) ................................................................................... 3

§ 26.5-4-203(14), C.R.S. (2022) ........................................................................... 5

§ 26.5-4-204(2), C.R.S. (2022) ............................................................................. 5

§ 26.5-4-205(1)(a), C.R.S. (2022) ........................................................................ 4

§ 26.5-4-205(2)(b), C.R.S. (2022) .............................................................. 4, 5, 16

§ 26.5-4-205, C.R.S. (2022) ................................................................................... 6

§ 26.5-5-303(3), C.R.S. (2022) ............................................................................. 5

§ 26-6.2-302(6), C.R.S. (2021) ............................................................................. 3

H.B. 21-1304 .......................................................................................................... 3

iii

**Rules**

Fed. R. Civ. P. 10(c) .................................................................................. 8

Fed. R. Civ. P. 12 (b)(1)........................................................................... 7, 8

Fed. R. Civ. P. 12(b) .................................................................................. 7

**Other Authorities**

13A Wright, Miller & Cooper, *Federal Practice & Procedure*, § 3532.1 at 1 (3d Ed.)
...................................................................................................... 18

13A Wright, Miller & Cooper, *Federal Practice & Procedure*, § 3532 at 112 (3d Ed.)
................................................................................................... 10, 15

iv

Pursuant to Fed. R. Civ. P. 12(b)(1), Dr. Lisa Roy, in her official capacity as Executive Director of the Colorado Department of Early Childhood (the "Department"), and Dawn Odean, in her official capacity as Director of Colorado's Universal Preschool Program (collectively, the "Defendants"), through the Colorado Attorney General, move to dismiss Darren Patterson Christian Academy's ("DPCA") claims against Defendants.

## D.C.COLO.LCivR 7.1(b)(2) CERTIFICATION

In accordance with D.C.COLO.LCivR 7.1(b)(2) and Civ. Practice Standard 7.1B., undersigned counsel conferred with DPCA before filing this Motion. Plaintiff opposes the relief requested.

## INTRODUCTION

Plaintiff is a participant in Colorado's statewide universal preschool program ("Program") which is in its inaugural school year. Plaintiff's participation as a faith-based preschool has been welcomed and encouraged. Plaintiff has 18 students matched to it for the fall and has already received its first tuition payments from the Department. Yet Plaintiff argues that it cannot participate in the Program and adhere to its religious mission despite the fact that it **is** participating and children in the Program are set to begin preschool in just a few weeks. Because Plaintiff can establish neither standing nor ripeness, Defendants request the Court dismiss Plaintiff's claims.

2

## BACKGROUND

**Colorado's History and Investment in Preschool**

Since 1988, Colorado has steadily increased its investment in high-quality

preschool programming. In 1988, Colorado established the Colorado Preschool

Program (CPP), which focused on serving Colorado's most in-need families.

Nevertheless, in 2019-2020, CPP was able to serve only approximately 25% of

Colorado's 4-year-old children. In the 2020 general election, Colorado voters

overwhelmingly approved proposition EE, establishing a dedicated source of

funding for statewide, voluntary, **<u>universal</u>** preschool (the "Program"). Colo. Rev.

Stat. § 26.5-4-202(1)(a)(V) (2022). The Colorado Legislature declared the intent of

the Program is to continue to address income barriers to preschool access and

further the benefits of high-quality preschool throughout the State. Colo. Rev. Stat.

§ 26.5-4-202. To implement the Program, House Bill 21-1304 created the

Department of Early Childhood. Colo. Rev. Stat. § 26-6.2-302(6) (2021). All the prior

responsibilities of the Department of Human Services for administering early

childhood programs and services, including the preschool Program, were

transferred to the new Department on July 1, 2022. Colo. Rev. Stat. § 26.5-1-

106(1)(a)(I)(A) (2022).

The new preschool Program is universal and available to all children and

families in the year prior to kindergarten. The Department is charged with

providing early childhood opportunities for **all** children in Colorado and prioritizing

the **equitable** delivery of resources. Colo. Rev. Stat. § 26.5-1-102(1)(a), (f).

Colorado law requires the Department to develop and establish in rule the

Quality Standards that each preschool provider must meet to receive Program

funding.  Colo. Rev. Stat. § 26.5-4-205(1)(a). These standards must reflect national

and community-informed best practices, and the Department must work with

families, educators, and program administrators to review and revise them as

necessary. *Id.* The Quality Standards must include a requirement that each

participating preschool provider provide eligible children with an equal opportunity

to enroll and receive preschool services regardless of race, ethnicity, religious

affiliation, sexual orientation, gender identity, lack of housing, income level, or

disability, as such characteristics and circumstances apply to the child or the child's

family. Colo. Rev. Stat. § 26.5-4-205(2)(b).

The Department has not yet promulgated Quality Standards for preschool

providers. Once the Standards are adopted, they will not become effective until the

2024-2025 school year. The prior rules[1] adopted by the Department of Human

Services continue in effect and apply until the Department promulgates Quality

Standards in rules adopted by the executive director. Colo. Rev. Stat. § 26.5-1-

---

[1] Because Plaintiff has been a licensed child care provider since 1995, Plaintiff has always been subject to the general child care licensing requirements.

106(1)(c). All rules promulgated by the Department must increase equity in access to programs and services. Colo. Rev. Stat. § 26.5-1-105(1)(a)(III).

Plaintiff requested that Defendant Roy grant it a "religious exemption from certain aspects of [the Program's] nondiscrimination provisions so it could participate [] while still adhering to its religious beliefs and practice." Doc. 1 at 17 ¶ 106. Defendant Roy, however, does not have authority to create an "exemption" which is inconsistent with State statute. Colo. Rev. Stat. §§ 24-4-103(8)(a); 26.5-4-205(2)(b), C.R.S.

**The Department's commitment to inclusion of faith-based providers**

The Department identified and recruited preschool providers throughout the State before beginning to enroll children for the 2023-2024 school year. In doing so, it established a "mixed delivery" system that enables parents to select preschool providers for their children from as broad a range as possible within their communities. Colo. Rev. Stat. § 26.5-4-204(2). Under this mixed delivery system, the Program's eligible preschool providers include licensed childcare centers, including those operated by public, private, and parochial schools. Colo. Rev. Stat. §§ 26.5-4-203(14); 26.5-5-303(3).

To ensure that the Program was inclusive of faith-based providers, the Department convened a faith-based work group consisting of religious providers, which met on a bi-weekly basis from December 20, 2022 through June 13, 2023. Odean Declaration ¶ 12. All participating preschool providers, including Plaintiff,

5

entered into Program Service Agreements (the "Agreement") with the Department. Plaintiff voluntarily signed the Agreement, which incorporated the minimum Quality Standards required by section 26.5-4-205. Exhibit 6 at 2. The Agreement also included a provision that a provider shall not discriminate against any person based on gender, race, ethnicity, religion, national origin, age, sexual orientation, gender identity, citizenship status, education, disability, socio-economic status, or any other identity. *Id.* The Department interprets and applies this provision to permit religious organizations to hire co-religionists in accordance with federal law, and to make employment decisions about their ministerial employees in accordance with federal law. Odean Declaration ¶ 26.

**Family choice governs the child's preschool placement**

Once providers were in place, the Department began the process of matching families to those providers. This process starts with the family choosing up to five providers and ranking them from one to five. The Department will match children with only one of the family's choices. If none of the family's choices are available, the family can select additional providers for their child. A child is placed with a provider only when their family agrees to accept the match. As of July 2023, over 38,000 children are participating in the Program and have been matched with over 2,000 preschool providers where children will start receiving preschool services in the fall of 2023. Odean Declaration ¶ 19. Thirty-seven faith-based providers are participating in the Program, and 809 children have been matched to those faith-

based providers. Odean Declaration ¶¶ 21, 22. Eighteen children have accepted a match to Plaintiff's preschool. Odean Declaration ¶ 22.

## LEGAL STANDARD

A motion to dismiss on the grounds that the plaintiff lacks standing is a challenge to the Court's subject matter jurisdiction. *Irvine v. I.C. Sys., Inc.*, 198 F. Supp. 3d 1232, 1235 (D. Colo. 2016). The plaintiff "bears the burden of establishing" standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish standing to bring an action, a plaintiff must show that they have suffered "(1) an injury in fact that is concrete and particularized and actual or imminent, (2) that the injury is fairly traceable to the challenged action of the defendant, and (3) that the injury is likely to be redressed by a favorable decision." *Peck v. McCann,* 43 F.4th 1116, 1129 (10th Cir. 2022) (internal quotes omitted).

A claim must also be ripe to establish this Court's subject matter jurisdiction, and the lack of ripeness is a basis for dismissal under Fed. R. Civ. P. 12(b). *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1498-99 (10th Cir. 1995). The ripeness test requires courts to consider two factors: (1) the fitness of the issue for judicial resolution; and (2) the hardship to the parties of withholding judicial consideration. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967).

Because this motion to dismiss is filed under Fed. R. Civ. P. 12 (b)(1) for lack of jurisdiction this court has "wide discretion to consider affidavits [and] documents. . . on jurisdictional issues." *Neiberger v. Hawkins*, 208 F.R.D. 301, 308 (D. Colo.

2002). As permitted by Fed. R. Civ. P. 10(c), Defendants adopt the arguments set forth more fully in their Response to Plaintiff's Motion for Preliminary Injunction.

## ARGUMENT

The Court lacks subject-matter jurisdiction over Plaintiff's claims, and they should be dismissed under Fed. R. Civ. P. 12(b)(1).

The Article III requirements of standing and ripeness (like other justiciability requirements) serve several key functions. They ensure quality judicial decision-making by requiring that federal courts are presented only with concrete controversies that "sharpen[] the presentation of issues upon which the court so largely depends for the illumination of difficult constitutional questions." *Schaffer v. Clinton,* 240 F.3d 878, 883 (2001) (quoting *Baker v. Carr,* 369 U.S. 186, 204 (1969)). Standing and ripeness requirements also avoid the unwise use of scarce judicial resources to resolve speculative or conjectural disputes that may never come to fruition. *See Keyes v. Sch. Dist. No. 1, Denver, Colo.,* 119 F.3d 1437, 1443 (10th Cir. 1997) ("The case or controversy requirement of Article III admonishes federal courts to avoid 'premature adjudication' and to abstain from 'entangling themselves in abstract disagreements'") (quoting *Abbott Labs. v. Gardner,* 387 U.S. 136, 148 (1967)).

For Plaintiff to establish standing and ripeness as they relate to its Quality Assurance Provision claim, a very lengthy and speculative set of circumstances must occur: (1) Family enrolls their eligible child in the Program; (2) Family

considers Plaintiff as a potential match in the Program; (3) Family learns about Plaintiff's policies and procedures; (4) Family requests an exemption from Plaintiff's policies and procedures; (5) Plaintiff refuses to provide equal access to preschool to that child; (6) A complaint is filed with the Department regarding Plaintiff's actions; (7) Department investigates complaint; (8) Department finds violation; (9) Plaintiff refuses to remedy violation; (10) Department files breach of contract claim against Plaintiff. Doc. 1 at 8, ¶¶ 46-51. None of these events has occurred, and they may never occur.

Likewise, under Contractual Provision 18(B) a lengthy and speculative set of events must also occur: (1) Individual applies for a Program position with Plaintiff or is already an employee in Plaintiff's preschool; (2) Plaintiff believes Individual is not living life as a co-religionist as a "born-again Christian" Doc. 1 at 12, ¶¶ 68, 71; (3) Plaintiff declines to hire or fires Individual; (4) Individual files a complaint with the Department; (5) Department investigates the Complaint; (6) Department finds contractual violation; (7) Plaintiff refuses to remedy violation; (8) Department files breach of contract claim against Plaintiff. [2]  None of these events have occurred and they may never occur.

Plaintiff does not have standing to assert these claims. A plaintiff has the burden to show an invasion of a legally protected interest that is concrete and

---

[2] These hypotheticals do not encompass every possible chain of events or circumstances that may ever lead to an injury.

particularized, and actual or imminent, not conjectural or hypothetical. *Spokeo,* 578 U.S. at 338. To establish standing in a pre-enforcement action alleging a First Amendment violation, a plaintiff must allege, among other things, "a credible threat of prosecution" and "ongoing injury resulting from the statute's chilling effect on his desire to exercise his First Amendment rights." *Peck*, 43 F.4th at 1129 (citations omitted). Plaintiff's alleged harm is purely speculative, and it has shown no credible threat of enforcement. And because Plaintiff is participating in the Program without changing its day-to-day practice, it has shown no chilling effect.

Nor is Plaintiff's lawsuit ripe. It is not fit for judicial resolution, as it involves "uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *New Mexicans for Bill Richardson*, 64 F.3d at 1499 (citing 13A Wright, Miller & Cooper, *Federal Practice & Procedure*, § 3532 at 112). Nor does the challenged action pose undue hardship because it does not present a direct and immediate dilemma for the parties. *Id.*

Because Plaintiff has failed to establish standing or ripeness, this action should be dismissed for lack of subject-matter jurisdiction.

## I.     Plaintiff Lacks Standing.

### A.     Plaintiff lacks standing to challenge Section 26.5-4-205(2)(b), which is captured in the "Quality Assurance Provision" of the Agreement.

Plaintiff has not established the required injury in fact. Doc. 1 at 15 ¶ 91. An injury in fact is not conjectural or hypothetical, but rather concrete and

particularized; it must also have actually occurred or be imminently about to occur. *Spokeo*, 578 U.S. at 339; *see also Susan B. Anthony List v. Driehaus* ("*SBA List*"), 573 U.S. 149, 158 (2014). Plaintiff alleges that it is prohibited from "requiring employees to share and live out its faith and from aligning its internal policies…with its religious beliefs about sexuality and gender" and that "[t]he Department forces the school to decide between exercising its constitutionally protected rights and participating in [the Program]" Doc. 1 at 15 ¶91; at 20 ¶126. Plaintiff has, however, signed up for and is currently participating in the Program, with 18 children matched to begin preschool this fall. Plaintiff has received the first tuition disbursement for these 18 children from the Department. Exhibit 1001. Plaintiff cannot and does not allege that the Department has taken or intends to take any action against it because of its internal policies and procedures. As enumerated above, it would take a minimum of 10 contingencies before Plaintiff could establish an injury-in-fact. For example, Plaintiff does not allege that any parent who selected its preschool through the Program has asked for bathroom, dress code, or other accommodations for a child at its preschool, nor that it has denied any such request. Nor can the Department determine whether a provider has violated the Quality Assurance Standards without specific facts about what a family requested, what the provider denied, and the reasons for and circumstances surrounding any such denial. As such, the Complaint fails to establish an injury

that is "concrete and particularized" and "actual or imminent." *Peck,* 43 F.4th at 1129.

Plaintiff also fails to establish a "causal connection" between its alleged injuries and the Department because Plaintiff has not shown that the Department has taken or intends to take disciplinary action against it. Plaintiff also fails to establish redressability as the Department has not denied funding to Plaintiff, initiated a breach of contract action, or taken any other action against Plaintiff's childcare license.

Nor has Plaintiff shown a sufficiently imminent threat of enforcement as required to establish standing for a pre-enforcement First Amendment claim. *SBA List*, 573 U.S. at 159. Courts assess the credibility of a plaintiff's fear of enforcement, and thus any ongoing injury from possible chilling effects on the exercise of its First Amendment rights, by considering: (1) past enforcement against the same conduct; (2) whether someone other than a prosecutor or agency may initiate charges; and (3) whether the state has disavowed future enforcement. *Peck*, 43 F.4th at 1129, 1132. The Department has not disciplined any religious Provider in the past, and the Department is the only entity with authority to enforce compliance with the Agreement[3]. Plaintiff cannot establish standing regarding the

---

[3] In its Motion for Preliminary Injunction, Plaintiff attempts to rely on the recent case of *303 Creative LLC v. Elenis,* but that case does not remotely resemble this one. In *303 Creative*, the Court found a credible threat of enforcement where there was a "history of past enforcement against nearly identical conduct" and where the

Quality Assurance Provision as Plaintiff has suffered no injury, nor is such injury imminent, and there exists no credible threat of enforcement.

**B.    Plaintiff lacks standing to challenge the "Blanket Provision" (hereafter referred to as "Contractual Provision 18(B))."**

The Complaint also fails to establish an actual injury resulting from Contractual Provision 18(B). Plaintiff alleges that it is prohibited from "requiring employees to share and live out its faith and from aligning its internal policies…with its religious beliefs about sexuality and gender" and that "[t]he Department forces the school to decide between exercising its constitutionally protected rights and participating in [the Program]." Doc. 1 at 15 ¶91; at 20 ¶126. The Department, however, interprets and applies Contractual Provision 18(B) to permit religious organizations to hire co-religionists in accordance with federal law and to make employment decisions involving its ministerial employees as protected by federal law. Odean Declaration ¶ 26.

The Department has not expressed any intention to interfere with Plaintiff's hiring decisions and has matched 18 children with Plaintiff's preschool. The Department has not caused concrete and particularized injury to Plaintiff, nor is any such injury imminent. It has no history of enforcement against identical conduct, it is the only entity with enforcement authority over this provision, and it

---

law at issue was enforceable by private parties as well as the state. *303 Creative LLC v. Elenis*, 143 S.Ct. 2298, 2310 (2023) (*quoting 303 Creative LLC v. Elenis*, 6 F.4th 1160, 1174 (10th Cir. 2021)). Plaintiff alleges neither here.

has disavowed enforcement against a religious provider's hiring of co-religionists in accordance with federal law and against a religious provider's employment decisions involving its ministerial employees as protected by federal law.

For all these reasons, Plaintiff cannot establish a credible fear of enforcement.

Therefore, this case should be dismissed.

## II.    Plaintiff's Lawsuit Is Not Ripe.

The ripeness test requires courts to consider two factors: (1) the fitness of the issue for judicial resolution; and (2) the hardship to the parties of withholding judicial consideration. *Abbott Laboratories*, 387 U.S. at 149. As the Supreme Court has made clear, a "claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States,* 523 U.S. 296, 300 (1998). Because Plaintiff's claims rest entirely on speculation about future events that have not occurred and may never occur, its claims are not ripe.

### A.    This claim is not fit for judicial resolution because the Plaintiff bases its claim on events that have not occurred and may never occur.

Plaintiff fails to present any actual controversy. Instead, Plaintiff merely alludes to imagined, uncertain scenarios that may never materialize. *New Mexicans for Bill Richardson*, 64 F.3d at 1499 (citing 13A Wright, Miller & Cooper, *Federal Practice & Procedure*, § 3532 at 112). Doc. 1 at 4 ¶18; at 18 ¶¶ 109-110.

14

In determining whether Plaintiff's claim is fit for decision or whether it instead involves uncertain or contingent future events, courts consider whether the challenged government action is final and whether determination of the merits turns upon strictly legal issues or requires facts that may not have been sufficiently developed. *Sierra Club v. Yeutter*, 911 F.2d 1405, 1415 (10th Cir. 1990). Plaintiff cannot assert any final governmental action against it as it still actively participates in the Program without interruption. Additionally, the Program has not begun rulemaking and Plaintiff is welcome to participate in that process as a stakeholder, just as it was welcome to join the faith-based working group. The Department has not taken any action against Plaintiff as no factual scenario has prompted an investigation, much less adverse administrative action.

For this claim to be fit for judicial resolution, the family of a Program student would have to enroll in Plaintiff's preschool and make a request inconsistent with Plaintiff's "restroom, pronoun, dress code, or housing" policy after being matched to it. Then, Plaintiff would have to deny that child's request in a way determined by the Department to violate the Program's nondiscrimination requirements. Plaintiff does not allege what that type of denial would look like or how it would occur. Determining whether Plaintiff had violated the nondiscrimination provision of the contract would require specific facts, absent here, including a family's request that Plaintiff make certain exceptions from its dress code, bathroom, or other policies, Plaintiff's refusal of such a request, and the reasons and circumstances surrounding

any such refusal. Even if Plaintiff did behave in a way that denied access to its preschool or services in violation of section 26.5-4-205(2)(b), the affected family would have to file a complaint against Plaintiff. That complaint would then need to be investigated and substantiated by the Department. If that complaint were substantiated, the Department would then give Plaintiff an opportunity to cure the substantiated complaint before taking action against it.

For the claim involving Contractual Provision 18(B) to be fit for judicial resolution, an individual would have to apply for a Program position with Plaintiff, Plaintiff would have to believe that that individual is not living their life as a co-religionist consistent with Plaintiff's religious beliefs, Plaintiff would have to decline to hire that individual, that individual would then have to file a complaint with the Department, and the Department would have to investigate the complaint and determine whether Plaintiff had violated the contractual provision. Again, determining whether Plaintiff had violated the provision requires specific facts, absent here, about the individual's qualifications and attributes, about the nature of the position at issue, and the reasons for and circumstances surrounding Plaintiff's refusal to hire.

"[J]udicial intervention where administrative action is contingent and dependent on context," is inappropriate and inhibits quality judicial decision-making. *Sierra Club*, 911 F.2d at 1416. Determining the merits of Plaintiff's claims would require the court to speculate on facts yet not developed. *United States v.*

16

*Bennet*, 823 F.3d 1316, 1326-27 (10th Cir. 2016). This would be akin to requesting an advisory opinion, and the "federal courts do not render advisory decisions." *Aetna Life Ins., Co. v. Haworth*, 300 U.S. 227, 239-41 (1937).

> ### B.   Withholding judicial consideration of this claim imposes no hardship as Plaintiff does not face a direct and immediate dilemma.

Plaintiff cannot demonstrate that it faces any hardship as it continues to actively participate in the Program. For Plaintiff to prove that it experiences hardship, it would have to establish that the Program creates a "direct and immediate dilemma" for the parties. *New Mexicans for Bill Richardson*, 64 F.3d at 1499 (*citing El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488, 495 (1st Cir. 1992)).

The Department has neither denied Plaintiff tuition reimbursement nor actual participation in the Program. In fact, 18 children have accepted a match with Plaintiff and plan to attend its school. Odean Declaration ¶ 22. Plaintiff's day-to-day business activities remain unchanged. *Sierra Club,* 911 F.2d at 1415. Delaying consideration of this case until a controversy actually arises does not harm Plaintiff because it faces no immediate or significant change in its conduct or affairs. *Id.* Because Plaintiff does not face a direct and immediate dilemma, recognizing this claim as unripe protects this Court from "premature adjudication, from entangling themselves in abstract disagreements." *Abbott Laboratories*, 387 U.S. at 148. To entertain a case lacking a real dispute unfairly directs judicial resources away from

parties who come to this Court with a real need for official assistance. 13A Wright, Miller & Cooper, *Federal Practice & Procedure*, § 3532.1 at 1 (3d Ed.).

For similar reasons, Plaintiff's challenge to Contractual Provision 18(B) is not ripe. Here too Plaintiff bases its claim on uncertain and contingent events that have not occurred and may never occur. As noted above, the Department interprets Contractual Provision 18(B) to allow religious organizations to prefer co-religionists in accordance with federal law. Odean Declaration ¶ 26. The Department has not expressed any intention to interfere with Plaintiff's hiring decisions and has disbursed tuition payments for 18 children with Plaintiff's preschool. Exhibit 1001. For the same reasons, withholding judicial consideration of this claim imposes no hardship as Plaintiff has not changed its day-to-day practices and does not face a direct and immediate dilemma.

Ultimately, there is no controversy present. As such, Plaintiff's claims are not ripe as they are not fit for adjudication and Plaintiff faces no hardship. *National Park Hospitality Association v. Department of the Interior*, 538 U.S. 803, 804 (2003). To involve the Court at this posture would undermine quality judicial decision-making and unwisely divert scarce judicial resources.

## III.   Conclusion

For these reasons, the claims against Defendants should be dismissed.

DATED: August 7, 2023.

PHILIP J. WEISER
Attorney General

/s/Virginia Carreno
VIRGINIA CARRENO, #40998*
Second Assistant Attorney General
NICOLE RUST, #45225*
Assistant Attorney General II
KENDRA YATES, #46360*
Assistant Attorney General II
JANNA K. FISCHER, #44952*
Senior Assistant Attorney General I
Colorado Attorney General's Office
1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone: (720) 508-6000
Email:virginia.carreno@coag.gov
niki.rust@coag.gov
kendra.yates@coag.gov
janna.fischer@coag.gov
*Attorneys for Defendants*
*Counsel of Record

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

**CERTIFICATE OF SERVICE**

I certify that I served the foregoing **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT** upon all parties herein by e-filing with the CM/ECF system maintained by the Court on August 7, 2023, addressed as follows:

Jacob E. Reed
44180 Riverside Parkway
Lansdowne, VA 20176
Email: jreed@ADFlegal.org

David A. Cortman
Jeremiah Galus
Ryan J. Tucker
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
Email: dcortman@ADFlegal.org; jgalus@ADFlegal.org; rtucker@adflegal.org

*Attorneys for Plaintiffs*

*s/* Bonnie Smith
Bonnie Smith