# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-01557-DDD-STV

**DARREN PATTERSON CHRISTIAN ACADEMY**
    Plaintiff,
v.

**LISA ROY**, in her official capacity as Executive Director of the Colorado Department of Early Childhood; and
**DAWN ODEAN**, in her official capacity as Director of Colorado's Universal Preschool Program,
    Defendants.

## DECLARATION OF DAWN ODEAN IN SUPPORT OF MOTION TO DISMISS

I, DAWN ODEAN, hereby declare under oath as follows:

1.    I am a citizen of the United States and resident of the State of Colorado. I am competent to make this declaration under oath, and make this declaration based on my personal knowledge.

2.    I am the Director of the Universal Preschool Program (the "Program") for the Colorado Department of Early Childhood.

3.    I assumed my position as Director of the Program on August 15, 2022.

4.    All the prior responsibilities of the Department of Human Services for administering early childhood programs and services, including the preschool Program, were transferred to the Colorado Department of Early Childhood (the "Department") on July 1, 2022.

5.    Families of children in the year before they are eligible for kindergarten, and qualifying 3-year-olds, can apply for the Program.

6.    Every child is eligible for up to half-day (15 hours) of state-funded, voluntary preschool each week the year before they are eligible for kindergarten.

7.    The Department was charged with identifying and recruiting preschool

1

providers throughout the State to participate in the Program.

8. The Department's mission for the Program is to provide early childhood opportunities for all children in Colorado and prioritize the equitable delivery of resources.

9. The Program is statutorily required to provide a "mixed delivery system" of preschools which includes public, private, and parochial schools.

10. The Program allows families to choose the right setting for their child, whether it is in a licensed community-based, school-based, or home-based preschool environment.

11. The Department has actively reached out to public, private, and parochial preschools and engaged them in discussions regarding the Program.

12. The Department convened a faith-based work group (the "group") which met on a bi-weekly basis from December 20, 2022, through June 13, 2023.

13. The purpose of the group was to ensure the Department was inclusive of faith-based providers.

14. After the Department had providers enrolled in the Program, it started the process of matching families to those providers.

15. Before a family is matched with a provider, the family chooses up to five providers and ranks them from one to five.

16. The Department will only match children with one of the family's choices. If none of the family's choices are available, the family will have the opportunity to select additional providers for their child.

17. Ultimately, families must accept a match before their children are placed with a provider.

18. As of August 2023, over 38,000 children are participating in the Program.

19. Those 38,000 children have been matched with over 2,000 preschool providers within the Program's mixed delivery system.

20. So far over 18,000 families have accepted their matches and plan to have

their children receive Universal Preschool services.

21.     Currently, there are 37 faith-based providers participating in the Program.

22.     809 children have been matched to faith-based providers and 18 children have accepted a match to Plaintiff's preschool.

23.     The Program has begun rulemaking but not as it relates to Quality Assurance Standards. Plaintiff is welcome to participate in that process as a stakeholder just as they were welcome to join the faith-based working group.

24.     The Plaintiff is a current preschool Provider participating in the Program. The Plaintiff received its first tuition payment for the 18 children in its Program on August 1, 2023.

25.     21 children have been matched with Plaintiff and 18 have accepted their match with Plaintiff.

26.     The Department interprets Contractual Provision 18(B) in accordance with federal law, which allows religious organizations to prefer co-religionists and to afford religious organizations wide discretion to make employment decisions about its ministerial employees, in accordance with federal law.

27.     The Department disavows enforcement of Contractual Provision 18(B) against religious providers who hire co-religionists in accordance with federal law, and against religious providers' employment decisions involving their ministerial employees as protected by federal law.

28.     The Department has not sanctioned any faith-based Program provider. The Department is the only entity with authority over the Program and the only entity with the ability to enforce compliance with the Program Service Agreement.

29.     All Program providers must be licensed for child-care through the Department.

30.      In order to obtain and retain a child care license, a provider must not violate the child care licensing rules, which include a requirement that a provider "shall not discriminate…based upon race, religion, age, gender, or disability." 12 CCR 2509-8, Section 7.701.14

31.     Plaintiff has held a child-care license since 1995.

32. Plaintiff renewed their child-care license on September 9, 2022, and at that time, confirmed that they had read all applicable rules and attested that they would follow all child-care licensing rules.

I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 7th day of August 2023, in Denver, Colorado.

_____
Dawn Odean