## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-01557-DDD-STV

**DARREN PATTERSON CHRISTIAN ACADEMY**
      Plaintiff,
v.

**LISA ROY**, in her official capacity as Executive Director of the Colorado Department of Early Childhood; and

**DAWN ODEAN**, in her official capacity as Director of Colorado's Universal Preschool Program,
      Defendants.

---

## RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

---

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................. 2

BACKGROUND .............................................................................................. 3

PRELIMINARY INJUNCTION STANDARD .............................................. 3

ARGUMENT ................................................................................................... 4

    I.  Plaintiff cannot establish standing and ripeness and thus cannot show a
       likelihood of success on the merits. ................................................................ 4

    A.  Plaintiff cannot establish standing because it has not suffered a concrete and
        particularized injury; nor is such an injury imminent, as Plaintiff faces no
        credible threat of enforcement. .......................................................................... 6

    B.  Plaintiff's lawsuit is not ripe because it is not fit for judicial resolution and
        withholding judicial consideration poses no hardship to Plaintiff. .................. 9

    1.  This claim is not fit for judicial resolution because Plaintiff bases its claims
       on events that have not occurred and may never occur.................................... 9

    2.  Withholding judicial consideration of this claim imposes no hardship as
       Plaintiff does not face a direct and immediate dilemma. .............................. 12

    II.  No other factors support a preliminary injunction. ...................................... 13

    A.  Plaintiff cannot establish irreparable harm. .................................................. 14

    B.  The balance of the threatened injuries and the public interest weigh heavily
        in the Department's favor. ............................................................................... 15

CONCLUSION.............................................................................................. 17

## TABLE OF AUTHORITIES

**Cases**

*303 Creative LLC v. Elenis*, 143 S. Ct. 2298 (2023).......................................................8

*303 Creative LLC v. Elenis*, 6 F.4th 1160 (10th Cir. 2021) ..........................................8

*Abbott Laboratories v. Gardner,* 387 U.S. 136 (1967) ........................................4, 9, 12

*Baker v. Carr,* 369 U.S. 186 (1969) ................................................................................4

*Carney v. Adams*, 141 S. Ct. 493 (2020)........................................................................6

*Colemen v. Miller*, 307 U.S. 433 (1939)..........................................................................6

*Denver Homeless Out Loud v. Denver*, 32 F.4th 1259 (10th Cir. 2022) .....................13

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256 (10th Cir. 2004)...........................................................................................................................15

*El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488 (1st Cir. 1992)..................................12

*Fish v. Kobach*, 840 F.3d 710 (10th Cir. 2016) .....................................................15, 16

*Heideman v. S. Salt Lake City*, 348 F.3d 1182 (10th Cir. 2003)................................14

*Keyes v. Sch. Dist. No. 1, Denver, Colo.,* 119 F.3d 1437 (10th Cir. 1997) ...................4

*Lawrence v. Colorado,* 455 F. Supp. 3d 1063 (D. Colo. 2020) ......................................3

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).....................................................3

*Magluta v. U.S. Fed. Bureau of Prisons*, No. 11-CV-02381-RM-KLM, 2013 WL 4781596, at *4 (D. Colo. Sept. 6, 2013) .....................................................................15

*Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803 (2003) ........................13

*New Mexicans for Bill Richardson v. Gonzales*, 64 F. 3d 1495 (10th Cir. 1995)... 9, 12

*N.M. Dep't of Game & Fish v. U.S. Dep't of the Interior,* 854 F.3d 1236 (10th Cir. 2017)...........................................................................................................................15

*Nken v. Holder*, 556 U.S. 418 (2009) ...........................................................................15

*Peck v. McCann*, 43 F.4th 1116 (10th Cir. 2022) ............................................................ 6

*Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) ............................................................... 17

*RoDa Drilling Co. v. Siegal*, 552 F.3d 1203 (10th Cir. 2009) ..................................... 14

*Salazar v. Buono*, 559 U.S. 700 (2010) ........................................................................ 16

*Schaffer v. Clinton,* 240 F.3d 878 (2001) ........................................................................ 4

*Sierra Club v. Yeutter*, 911 F.2d 1405 (10th Cir. 1990) .................................. 10, 11, 12

*Spokeo Inc. v. Robins,* 578 U.S. 330 (2016) ................................................................... 6

*State v. U.S. Envtl. Prot. Agency,* 989 F.3d 874 (10th Cir. 2021) ............................... 15

*Susan B. Anthony List v. Driehaus,* 573 U.S. 149 (2014) .............................................. 6

*Texas v. United States*, 523 U.S. 296 (1998) ................................................................. 9

*Thompson v. Dewine*, 959 F.3d 804 (6th Cir. 2020) ..................................................... 16

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ................................................... 6

*United States v. Bennet*, 823 F.3d 1316 (10th Cir. 2016) ........................................... 11

*United States v. Cabral*, 926 F.3d 687 (10th Cir. 2019) ................................................ 9

*Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7 (2008) ........................ 4

**Constitutions**

Article III, U.S. Constitution ............................................................................... 3, 4, 6

**Statutes**

§ 26.5-1-102(1)(a), (f), C.R.S. (2022) ........................................................................... 16

§ 26.5-4-202, C.R.S. (2022) ......................................................................................... 16

§ 26.5-4-202(1)(a)(V), C.R.S. (2022) .......................................................................... 16

§ 26.5-4-205(2)(b), C.R.S. (2022) ........................................................................... 2, 16

**Rules**

Fed. R. Civ. P. 10(c) ........................................................................................... 3

**Other Authorities**

13A Wright, Miller & Cooper, *Federal Practice & Procedure*, § 3532.1 at 1 (3d Ed.) ....................................................................................................................... .12

13A Wright, Miller, and Cooper, *Federal Practice and Procedure*, §3532 at 112 (3d Ed.) ........................................................................................................................ 9

Defendants, Lisa Roy, in her official capacity as Executive Director of the Colorado Department of Early Childhood, and Dawn Odean, in her official capacity as Director of Colorado's Universal Preschool Program, respond to Plaintiff's Motion for Preliminary Injunction (Doc. 14) and urge the Court to deny the Motion.

## INTRODUCTION

During the 2020 election, Colorado voters approved a Universal Preschool Program (the "Program"). Beginning in the 2023-2024 school year, the Program provides that children qualify for at least 15 hours per week of free preschool services. The Colorado Department of Early Childhood (the "Department") has worked to identify and recruit preschool providers throughout the State from as broad a range as possible, including faith-based providers. Plaintiff is one of 37 faith-based providers participating in the Program. Plaintiff currently has 18 children accepted in its preschool through the Program for the 2023-24 school year. Odean Declaration ¶ 25. On August 1, 2023, Plaintiff received its first Program payment for all 18 of those children. Exhibit 1001.

Although it has not encountered a single obstacle to its participation in the Program, Plaintiff asserts that Colo. Rev. Stat. § 26.5-4-205(2)(b), (the "Quality Assurance Provision") and one of the Program's contract terms ("Contractual Provision 18(B)") infringe upon its First Amendment rights by preventing Plaintiff from: (1) hiring employees that share its religious beliefs; (2) participating in the Program; and (3) receiving tuition reimbursement. Plaintiff's asserted claims cannot

2

succeed on the merits as they fail to satisfy Article III requirements of standing and ripeness. Additionally, Plaintiff cannot establish that it will suffer irreparable harm absent a preliminary injunction because Plaintiff has neither suffered nor imminently faces any of its claimed harms—the Department has not attempted to interfere with Plaintiff's hiring practices; Plaintiff continues to actively participate in the Program; and Plaintiff is receiving tuition payments from the Department. Finally, the balance of equities and public interest weigh heavily in the Department's favor. For these reasons, Plaintiff's Motion for Preliminary Injunction should be denied.

## BACKGROUND

As permitted by Fed. R. Civ. P. 10(c), Defendants adopt the background set forth more fully in their Motion to Dismiss.

## PRELIMINARY INJUNCTION STANDARD

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Lawrence v. Colorado,* 455 F. Supp. 3d 1063, 1070 (D. Colo. 2020) (quotations omitted). A plaintiff seeking a preliminary injunction in federal court must satisfy Article III justiciability requirements of standing and ripeness. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). A plaintiff seeking a preliminary injunction must also establish (1) a substantial likelihood of success on the merits, (2) that they will suffer irreparable harm if the preliminary injunction is denied, (3) that the threatened injury outweighs the injury caused by the injunction,

and (4) that the injunction is not adverse to public interest. *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008).

## ARGUMENT

**I.    Plaintiff cannot establish standing and ripeness and thus cannot show a likelihood of success on the merits.**

The Article III requirements of standing and ripeness (like other justiciability requirements) serve several key functions. They ensure quality judicial decision-making by requiring that federal courts are presented only with concrete controversies that "sharpen[] the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Schaffer v. Clinton,* 240 F.3d 878, 883 (2001) (quoting *Baker v. Carr,* 369 U.S. 186, 204 (1969)). Standing and ripeness requirements also prevent the unwise use of scarce judicial resources to resolve speculative or conjectural disputes that may never come to fruition. *See Keyes v. Sch. Dist. No. 1, Denver, Colo.,* 119 F.3d 1437, 1443 (10th Cir. 1997) ("The case or controversy requirement of Article III admonishes federal courts to avoid 'premature adjudication' and to abstain from 'entangling themselves in abstract disagreements'") (quoting *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148 (1967)).

For Plaintiff to establish standing and ripeness to challenge the Quality Assurance Provision, a very lengthy and speculative set of circumstances must occur: (1) a family enrolls their eligible child in the Program; (2) the family considers Plaintiff as a potential match in the Program; (3) the family learns about

4

Plaintiff's policies and procedures; (4) the family requests an exemption from Plaintiff's policies and procedures; (5) Plaintiff refuses to provide equal access to preschool to that child; (6) A complaint is filed with the Department regarding Plaintiff's actions; (7) the Department investigates the complaint; (8) the Department finds violation; (9) Plaintiff refuses to remedy the violation; and (10) the Department files a breach of contract claim against Plaintiff. Doc. 1 at 8, ¶¶ 46-51. None of these events has occurred, and they may never occur.

Likewise, under Contractual Provision 18(B), a lengthy and speculative set of events must also occur: (1) an Individual applies for a Program position with Plaintiff or is already an employee in Plaintiff's preschool; (2) Plaintiff believes the Individual is not living life as a co-religionist as a "born-again Christian," Doc.1 at 12, ¶¶ 68, 71; (3) Plaintiff declines to hire or fires the Individual; (4) the Individual files a complaint with the Department; (5) the Department investigates the Complaint; (6) the Department finds a violation of Contractual Provision 18(B); (7) Plaintiff refuses to remedy the violation; and (8) the Department files a breach of contract claim against Plaintiff.  None of these events have occurred, and they may never occur.

Given the lengthy and speculative chain of events that would be required for Plaintiff to establish any injury, Plaintiff can establish neither standing nor ripeness, and this Court cannot consider the merits.

**A.** **Plaintiff cannot establish standing because it has not suffered a concrete and particularized injury; nor is such an injury imminent, as Plaintiff faces no credible threat of enforcement.**

Under Article III, federal courts lack jurisdiction to "pass upon abstract intellectual problems." *Carney v. Adams*, 141 S. Ct. 493, 498 (2020) (quoting *Colemen v. Miller*, 307 U.S. 433, 460 (1939) (opinion of Frankfurter, J.)). A plaintiff has the burden to show an invasion of a legally protected interest that is concrete and particularized, and actual or imminent, not conjectural or hypothetical. *Spokeo Inc. v. Robins,* 578 U.S. 330, 339 (2016). The touchstone of this inquiry is whether a plaintiff suffers concrete harm. "No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021).

In a narrow category of cases, a plaintiff who fears enforcement of a challenged law may seek pre-enforcement review. *See Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 158-59 (2014) ("*SBA List*"). However, pre-enforcement challenges are limited to cases where enforcement is "certainly impending, or there is a substantial risk that the harm will occur." *Id.* at 158. To establish standing in a pre-enforcement action alleging a First Amendment violation, a plaintiff must thus allege, among other things, "a credible threat of prosecution" and "ongoing injury resulting from the statute's chilling effect on his desire to exercise his First Amendment rights." *Peck v. McCann*, 43 F.4th 1116, 1129 (10th Cir. 2022) (citations omitted).

6

Here, Plaintiff cannot establish standing for its challenge to the Quality Assurance Provision because it has not suffered a concrete and particularized injury; nor is such an injury imminent, as Plaintiff faces no credible threat of enforcement. First, Plaintiff is participating in the Program, has 18 children matched to its preschool, and has received the initial tuition disbursement from the Program for those 18 children. Second, Plaintiff cannot and does not allege that the Department has taken or intends to take any action against it because of its internal policies or procedures. Plaintiff does not allege that any family has asked for any exemptions to Plaintiff's bathroom, dress code, or other policies enumerated in the Motion. Nor can the Department determine whether a provider has violated the Quality Assurance Provision without specific facts about what a family requested, what the provider denied, and the reasons for and circumstances surrounding any such denial. Third, the Department has not disciplined any faith-based Provider in the past, and the Department is the only entity with authority to enforce compliance with the Quality Assurance Provision.

Plaintiff also fails to establish an actual or imminent injury resulting from Contractual Provision 18(B) because it has not suffered a concrete and particularized injury; nor is such an injury imminent, as Plaintiff faces no credible threat of enforcement. Plaintiff appears to assert that it cannot participate in the Program and continue to "hire based on its religion." Doc. 14 at 10; Doc. 1 at 18, ¶ 110. However, the Department interprets Contractual Provision 18(B) to allow

7

religious organizations like Plaintiff to prefer its co-religionists and to afford it wide discretion to make employment decisions about its ministerial employees, so long as it complies with federal law. The Department has not and will not enforce Contractual Provision 18(B) against religious providers who prefer co-religionists in compliance with federal law, or against religious providers' employment decisions involving their ministerial employees that comply with federal law. Odean Declaration ¶ 26. The Department has not disciplined any provider in the past, has not expressed any intention to interfere with Plaintiff's hiring decisions, has matched 18 children with Plaintiff's preschool and disbursed initial tuition payments to Plaintiff. The Department is the only entity with enforcement authority over this provision.[1]

For all these reasons, Plaintiff cannot establish a credible threat of enforcement, and thus cannot establish pre-enforcement standing. And because Plaintiff cannot establish standing, it is not likely to prevail on the merits.

---

[1] Plaintiff attempts to rely on the recent case of *303 Creative LLC v. Elenis,* but that case does not remotely resemble this one. Doc. 14 at 17. In *303 Creative*, the Court found a credible threat of enforcement where there was a "history of past enforcement against nearly identical conduct" and where the law at issue was enforceable by private parties as well as the state. *303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2310 (2023) (quoting *303 Creative LLC v. Elenis*, 6 F.4th 1160, 1174 (10th Cir. 2021)). Plaintiff alleges neither here.

### B. Plaintiff's lawsuit is not ripe because it is not fit for judicial resolution and withholding judicial consideration poses no hardship to Plaintiff.

The Court also lacks subject matter jurisdiction because Plaintiff's claims are not ripe. *See New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1498-99 (10th Cir. 1995). A claim is not ripe for adjudication when it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998); *accord United States v. Cabral*, 926 F.3d 687, 693 (10th Cir. 2019). The ripeness test requires courts to consider two factors: (1) the fitness of the issue for judicial resolution; and (2) the hardship to the parties of withholding judicial consideration. *Abbott Laboratories*, 387 U.S. at 149.

### 1. This claim is not fit for judicial resolution because Plaintiff bases its claims on events that have not occurred and may never occur.

Plaintiff fails to present any actual controversy fit for judicial resolution. Instead, Plaintiff merely alludes to imagined, uncertain scenarios that may never materialize. *New Mexicans for Bill Richardson*, 64 F.3d at 1499 (citing 13A Wright, Miller, and Cooper, *Federal Practice and Procedure*, §3532 at 112); Doc. 1 at 4 ¶ 18; at 18 ¶¶ 109-110.

In determining whether Plaintiff's claim is fit for decision or whether it instead involves uncertain or contingent future events, courts consider whether the challenged government action is final and whether determination of the merits turns upon strictly legal issues or requires facts that may not have been sufficiently

developed. *Sierra Club v. Yeutter*, 911 F.2d 1405, 1415 (10th Cir. 1990). Plaintiff cannot assert any final governmental action against it as it is actively participating in the Program without interruption and in fact already received its first tuition payment from the Department. Odean Declaration ¶ 24; Exhibit 1001. Additionally, the Program has not yet begun rulemaking for its Quality Standards and Plaintiff is welcome to participate in that process as a stakeholder, just as it was welcome to join the faith-based working group. The Department has not taken any action against Plaintiff as no factual scenario has prompted a complaint or investigation, much less adverse administrative action.

For the claim involving the Quality Assurance Provision to be fit for judicial resolution, the family of a Program student would have to make a request inconsistent with Plaintiff's "restroom, pronoun, dress code, or housing" policy. Then, Plaintiff would have to deny that child's request. Plaintiff does not allege what that type of denial would look like or how it would occur. The affected family would have to file a complaint against Plaintiff. That complaint would then need to be investigated and substantiated by the Department. Determining whether Plaintiff had violated the Program's Quality Assurance Provision requires specific facts, absent here, including the specifics of a family's request that Plaintiff make certain exceptions from its policies, Plaintiff's refusal of such a request, and the reasons for and circumstances surrounding any such refusal. If that complaint were

substantiated, the Department would then give Plaintiff an opportunity to cure the substantiated complaint before taking action against it.

Similarly, for the claim involving Contractual Provision 18(B) to be fit for judicial resolution, an individual would have to apply for a Program position with Plaintiff, Plaintiff would have to believe that that individual is not living their life as a co-religionist consistent with Plaintiff's religious beliefs, Plaintiff would have to decline to hire that individual, the individual would then have to file a complaint with the Department, and the Department would have to investigate the complaint and determine whether the Plaintiff had violated the contractual provision (which is interpreted to permit religious providers to prefer co-religionists in accordance with federal law and to protect religious providers' employment decisions about its ministerial employees in accordance with federal law). Again, determining whether Plaintiff's action violated the provision requires specific facts, absent here, about the individual's qualifications and attributes, the nature of the position in question, and the reasons for and circumstances surrounding Plaintiff's refusal to hire. Determining the merits of Plaintiff's claims would thus require the Court to speculate on facts not yet developed. *United States v. Bennet*, 823 F.3d 1316, 1326-27 (10th Cir. 2016). "[J]udicial intervention where administrative action is contingent and dependent on context" is inappropriate because it inhibits quality judicial decision-making. *Sierra Club*, 911 F.2d at 1416.

**2.   Withholding judicial consideration of this claim imposes no hardship as Plaintiff does not face a direct and immediate dilemma.**

Plaintiff cannot demonstrate that it faces any hardship since it continues to receive all the benefits of the Program. For Plaintiff to prove that it experiences hardship, it would have to establish that the Program creates a "direct and immediate dilemma" for the parties. *New Mexicans for Bill Richardson*, 64 F.3d at 1499 (citing *El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488, 495 (1st Cir. 1992)).

The Department has neither denied Plaintiff tuition reimbursement nor actual participation in the Program. In fact, 18 children have accepted a match with Plaintiff and plan to attend its school. Odean Declaration ¶ 25. Plaintiff does not point to any of its day-to-day activities that have changed. *Sierra Club*, 911 F.2d at 1415. Delaying consideration of this case until a controversy actually arises does not harm Plaintiff because it faces no immediate or significant change in its conduct or affairs. *Id.* Because Plaintiff does not face a direct and immediate dilemma, recognizing this claim as unripe protects this Court from "premature adjudication from entangling [itself] in abstract disagreements." *Abbott Laboratories*, 387 U.S. at 148. Moreover, to entertain a case lacking a real dispute unfairly directs judicial resources away from parties who come to this Court with a real need for official assistance. 13A Wright, Miller & Cooper, *Federal Practice & Procedure*, § 3532.1 at 1 (3d Ed.).

For similar reasons, Plaintiff's challenge to Contractual Provision 18(B) is not ripe. Here too Plaintiff bases its claim on uncertain and contingent events that have not occurred and may never occur. The Department interprets and applies Contractual Provision 18(B) to permit religious organizations to hire co-religionists and make employment decisions about its ministerial employees so long as they comply with federal law.  Odean Declaration ¶ 26. The Department has not expressed any intention to interfere with Plaintiff's hiring decisions and has paid tuition for the 18 children accepted into Plaintiff's preschool Program. For the same reasons, withholding judicial consideration of this claim imposes no hardship as Plaintiff has not changed its day-to-day practices and does not face a direct and immediate dilemma.

Ultimately, Plaintiff's claims are not ripe as they are not fit for adjudication and Plaintiff faces no hardship. *Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803, 804 (2003). To involve the Court at this posture would undermine quality judicial decision-making and unwisely divert scarce judicial resources.

Because Plaintiff's claims are not ripe, this Court cannot consider the merits, and its motion for preliminary injunction should be denied.

## II.    No other factors support a preliminary injunction.

Plaintiff cannot establish that Plaintiff faces irreparable injury, that the balance of equities tips in Plaintiff's favor, or that an injunction is in the public interest. *Denver Homeless Out Loud v. Denver*, 32 F.4th 1259, 1279 (10th Cir. 2022)

(movant must demonstrate all four factors before a preliminary injunction can issue).

### A.      Plaintiff cannot establish irreparable harm.

A plaintiff seeking the extraordinary remedy of a preliminary injunction must establish more than simply the "injury" that is required to have standing to bring the case in the first place. Plaintiff must show that it will suffer irreparable harm that is "certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). "Purely speculative harm will not suffice." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009). Instead, the party seeking preliminary injunctive relief "must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Heideman*, 348 F.3d at 1189.

Plaintiff here alleges that it will be harmed if a series of events take place that have not occurred and may never occur. It does not face an imminent loss of funds or enrolled students and, in fact, has received its first payment for its participation in the Program. Exhibit 1001. Plaintiff's alleged harm is speculative and it has not made any showing of a "clear and present need" for relief. *Heideman*, 348 F.3d at 1189.

Plaintiff argues because its claim is a constitutional claim, it needs only to show a likelihood of success on the merits and does not need to show an irreparable injury. Doc. 14 at 19. But this contention ignores that this Court must "nonetheless

14

engage in [the] traditional equitable inquiry as to the presence of irreparable harm in such a context[.]" *Fish v. Kobach*, 840 F.3d 710, 752 (10th Cir. 2016). Indeed, "a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004). To qualify as an irreparable harm, the threatened injury must be "imminent, certain, actual and not speculative*." State v. U.S. Envtl. Prot. Agency,* 989 F.3d 874, 886 (10th Cir. 2021). If the party seeking the preliminary injunction fails to meet its burden of establishing irreparable injury, the Court "need not address the remaining preliminary injunction factors." *N.M. Dep't of Game & Fish v. U.S. Dep't of the Interior,* 854 F.3d 1236, 1249 (10th Cir. 2017). Plaintiff has not identified any actual or imminent injury and cannot show irreparable harm here.

> **B.    The balance of the threatened injuries and the public interest weigh heavily in the Department's favor.**

The third and fourth factors, the balance of the threatened injuries and the public interest, "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). As detailed above, Plaintiff is not currently suffering any injury nor does it face any imminent injury. As such, the threatened injury to the Plaintiff cannot outweigh the injury that would be caused by the injunction. *See Magluta v. U.S. Fed. Bureau of Prisons*, No. 11-CV-02381-RM-KLM, 2013 WL 4781596, at *4 (D. Colo. Sept. 6, 2013) (holding that where plaintiff "will suffer no injury if an injunction is not entered," the balance of harm factor weighs in

defendants' favor).

In terms of the public interest, "a court should be particularly cautious when contemplating relief that implicates public interests." *Salazar v. Buono*, 559 U.S. 700, 714 (2010). Here, the Colorado legislature declared what it believes to be the public interest in addressing income barriers and increasing access to high-quality preschool for **all** children in Colorado through the **equitable** delivery of resources. Colo. Rev. Stat. §§ 26.5-4-202; 26.5-1-102(1)(a), (f). In doing so, it mandated that the Department require that preschool providers provide all eligible children with an equal opportunity to enroll and receive preschool services regardless of race, ethnicity, religious affiliation, sexual orientation, gender identity, lack of housing, income level, or disability. Colo. Rev. Stat. § 26.5-4-205(2)(b).

Colorado voters also overwhelmingly voted to establish voluntary, **universal** preschool. Colo. Rev. Stat. § 26.5-4-202(1)(a)(V). The legislature and voters are in a better position than Plaintiff or this Court to determine the public interest. *Fish*, 840 F.3d at 755 ("our democratically elected representatives are in a better position than this Court to determine the public interest"); *accord Thompson v. Dewine*, 959 F.3d 804, 812 (6th Cir. 2020) ("giving effect to the will of the people by enforcing the laws they and their representatives enact serves the public interest"). The public's interest in ensuring equitable access to preschool for all Colorado children weighs heavily in Defendants' favor.

In addition, Colorado has a compelling interest in eliminating discrimination in hiring as well as in educational access. The goal of eliminating discrimination "plainly serves compelling state interests of the highest order." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 624 (1984). Therefore, this factor also weighs against a preliminary injunction.

## CONCLUSION

For these reasons, the Plaintiff's Motion for Preliminary Injunction should be denied.

DATED: August 7, 2023.

PHILIP J. WEISER
Attorney General

s/Virginia Carreno
*VIRGINIA CARRENO, #40998\**
Second Assistant Attorney General
*NICOLE RUST, #45225\**
Assistant Attorney General II
*KENDRA YATES, #46360\**
Assistant Attorney General II
*JANNA K. FISCHER*, #44952\*
Assistant Attorney General II
Colorado Attorney General's Office
1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone: (720) 508-6000
Email:virginia.carreno@coag.gov
     niki.rust@coag.gov
     kendra.yates@coag.gov
     janna.fischer@coag.gov
*Attorneys for Defendants*
\*Counsel of Record

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing pleading complies with the type-volume

limitation set forth in Judge Domenico's Practice Standard III(A)(1).

**CERTIFICATE OF SERVICE**

I certify that I served the foregoing **RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** upon all parties herein by e-filing with the CM/ECF system maintained by the Court on August 7, 2023, addressed as follows:

Jacob E. Reed
44180 Riverside Parkway
Lansdowne, VA 20176
Email: jreed@ADFlegal.org

David A. Cortman
Ryan J. Tucker
Jeremiah Galus
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
Email: dcortman@ADFlegal.org; rtucker@ADFlegal.org; jgalus@ADFlegal.org

*Attorneys for Plaintiffs*

*s/ Bonnie Smith*
Bonnie Smith