# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-1557-DDD-STV

DARREN PATTERSON CHRISTIAN
ACADEMY,

<em>Plaintiff,</em>

    v.

LISA ROY, et al.,

<em>Defendants.</em>

---

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

---

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ ii

Introduction ........................................................................................................... 1

Summary of Facts ................................................................................................. 3

Argument ............................................................................................................... 4

    I.   The school has standing because the challenged rules credibly threaten and chill its religious speech and exercise. ........................................................ 4

        A.  The school faces a credible threat because the challenged rules plainly proscribe the school's religious speech and exercise. ...................... 5

        B.  Other factors confirm the credible threat of enforcement. .......................... 9

            1.  The rules can be enforced against the school at any time, including by third parties. ....................................................................... 9

            2.  The State has not disavowed enforcement against the school's internal policies. ..................................................................... 10

            3.  The State's limited "disavowal" for the school's employment practices is insufficient. ...................................................... 10

    II.  This case is ripe because it raises primarily legal issues and the school faces a direct and immediate dilemma. ....................................................... 12

    III.The school is entitled to a preliminary injunction. ...................................... 14

Conclusion ........................................................................................................... 16

Certificate of Compliance .................................................................................. 17

Certificate of Service ......................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*303 Creative LLC v. Elenis,*
 143 S. Ct. 2298 (2023) ............................................................................. 7

*303 Creative LLC v. Elenis,*
 6 F.4th 1160 (10th Cir. 2021) ................................................................... 7

*Abbott Laboratories v. Gardner,*
 387 U.S. 136 (1967) ................................................................................. 13

*Alexis Bailly Vineyard, Inc. v. Harrington,*
 931 F.3d 774 (8th Cir. 2019) ..................................................................... 5

*Awad v. Ziriax,*
 670 F.3d 1111 (10th Cir. 2012) ............................................................... 13

*Bronson v. Swensen,*
 500 F.3d 1099 (10th Cir. 2007) ................................................................. 4

*Brown v. Herbert,*
 850 F. Supp. 2d 1240 (D. Utah 2012) ....................................................... 8

*Chamber of Commerce of United States v. Edmondson,*
 594 F.3d 742 (10th Cir. 2010) ................................................................. 15

*Citizens for Responsible Government State Political Action Committee v.*
 *Davidson,*
 236 F.3d 1174 (10th Cir. 2000) ............................................................... 12

*Colorado Union of Taxpayers, Inc. v. Griswold,*
 No. 22-1122, 2023 WL 5426581 (10th Cir. Aug. 23, 2023) ............... 7, 9

*Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day*
 *Saints v. Amos,*
 483 U.S. 327 (1987) ................................................................................... 8

*Hill v. Williams,*
 No. 16-cv-02627-CMA, 2016 WL 8667798 (D. Colo. Nov. 4, 2016) ................. 15

*Hobby Lobby Stores, Inc. v. Sebelius,*
 723 F.3d 1114 (10th Cir. 2013) ............................................................... 15

*Høeg v. Newsom,*
No. 2:22-cv-01980, 2023 WL 414258 (E.D. Cal. Jan. 25, 2023)......................11

*Initiative & Referendum Institute v. Walker,*
450 F.3d 1082 (10th Cir. 2006).................................................................. 4, 13

*Kikumura v. Hurley,*
242 F.3d 950 (10th Cir. 2001)..........................................................................14

*N.L.R.B. v. Catholic Bishop of Chicago,*
440 U.S. 490 (1979)............................................................................................8

*North Carolina Right to Life, Inc. v. Bartlett,*
168 F.3d 705 (4th Cir. 1999)............................................................................11

*Peck v. McCann,*
43 F.4th 1116 (10th Cir. 2022) ................................................. passim

*Rocky Mountain Gun Owners v. Polis,*
No. 23-cv-01077, 2023 WL 5017253 (D. Colo. Aug. 7, 2023) .............................8

*Rodgers v. Bryant,*
942 F.3d 451 (8th Cir. 2019)............................................................................12

*St. Mary Catholic Parish in Littleton v. Roy,*
Case No. 1:23-cv-02079 (D. Colo. filed Aug. 16, 2023)......................................2

*Starkey v. Roman Catholic Archdiocese of Indianapolis, Inc.,*
496 F. Supp. 3d 1195 (S.D. Ind. 2020)............................................................11

*Steffel v. Thompson,*
415 U.S. 452 (1974) ...........................................................................................5

*Susan B. Anthony List v. Driehaus,*
573 U.S. 149 (2014) ................................................................................. passim

*United States v. Supreme Court of New Mexico,*
839 F.3d 888 (10th Cir. 2016)...........................................................................5

*Verlo v. Martinez,*
820 F.3d 1113 (10th Cir. 2016) ......................................................................14

*Virginia v. American Booksellers Association,*
484 U.S. 383 (1988) ...........................................................................................7

*Wilson v. Stocker*,
    819 F.2d 943 (10th Cir. 1987) .......................................................................... 12

## Statutes

Colo. Rev. Stat. § 24-34-306(9) ......................................................................... 9

Colo. Rev. Stat. § 24-34-307 .......................................................................... 9

Colo. Rev. Stat. § 24-34-602 .......................................................................... 9

Colo. Rev. Stat. § 26.5-4-205(2)(b) ..................................................... 3, 6, 13

## Other Authorities

Gabrielle Franklin, *Polis: Catholic schools that want universal pre-K must not
    discriminate*, Fox 31 (Aug. 17, 2023),
    https://kdvr.com/news/local/colorado-universal-preschool-catholic-
    lawsuit-polis/ ..................................................................................................... 2

## Rules

Colo. Code Regs. § 708-1:81.6(A)(4) .................................................................. 6

Colo. Code Regs. § 708-1:81.8 .......................................................................... 6

Colo. Code Regs. § 708-1:81.9(B) ...................................................................... 6

## INTRODUCTION

The Colorado Department of Early Childhood insists that schools participating in the state's inaugural Universal Preschool Program must promise to not "discriminate" against any person based on religion, sexual orientation, or gender identity. But many faith-based schools, including Darren Patterson Christian Academy, expect employees to share and live out their faith and align their internal policies with their beliefs about sexuality and gender. So Darren Patterson Christian Academy and a coalition of faith-based schools separately asked for a religious exemption. In both cases the Department refused. Predictably, the number of faith-based providers participating in the Program is minuscule: less than 2% of participants are faith-based. Decl. of Dawn Odean ¶¶ 19, 21, ECF No. 28-1 ("Odean Decl.") (37 out of more than 2,000 participating schools).

The Department does not even try to defend the constitutionality of its actions. In fact, it says Darren Patterson Christian Academy cannot even come to court until it agrees to follow the Department's nondiscrimination rules and then faces complaints, investigations, and penalties. This is wrong. The school need not subject itself to "penalty" or be "explicitly threatened" to have standing. *Peck v. McCann*, 43 F.4th 1116, 1129 (10th Cir. 2022). Nor should the Court postpone relief when the challenged rules apply to the school right now, and the school can be punished at any time for violating them—including by third parties.

The Department's other arguments against standing and ripeness fare no better. Depositing the first tuition payment into the school's account after this litigation began does not eliminate the controversy because the school's ability to stay in the Program and use those funds depends on the outcome here. Suppl. Decl. of Joshua Drexler ¶¶ 3–6 ("Suppl. Drexler Decl.").

The Department's purported "disavowal" also does not solve the conflict. To start, the Department does not disavow enforcement against the school's internal policies. And its promise to not enforce against the school's employment practices is carefully conditioned on those practices being "in accordance with federal law." Defs.' Mot. to Dismiss 13, ECF No. 28 ("MTD"); Defs.' Resp. to Pl.'s Mot. for Prelim. Inj. 8, ECF No. 29 ("Defs' Resp."). What the State doesn't tell this Court is that it recently argued in another case that employment practices much like the school's are "not shielded from liability by Title VII's limited exemptions for religious organizations, by the doctrine of church autonomy, or by the Religious Freedom Restoration Act." Brief for Amicus Curiae States at 2 n.3, *Billard v. Charlotte Catholic High Sch.*, No. 22-1440 (4th Cir. Nov. 30, 2022), 2022 WL 17415729. In other words, the federal-law qualifier essentially makes the "disavowal" meaningless.

What's more, the purported "disavowal" does not match what the State is telling everyone else. Before suing, the Department denied the school's request for a religious exemption even though the request specifically referenced the school's employment practices. Verified Compl. ("VC"), Ex. 10. And in responding to questions about this and a similar lawsuit,[1] Governor Polis said religious schools "can run [their schools] the way [they] want" if they do not receive state money, but then made clear that schools receiving state funds must "agree" with the State's "basic values" and cannot "discriminate."[2] This further confirms that a credible threat of enforcement exists, and that the school has standing.

---

[1] The similar lawsuit is *St. Mary Catholic Parish in Littleton v. Roy*, Case No. 1:23-cv-02079 (D. Colo. filed Aug. 16, 2023).

[2] Gabrielle Franklin, *Polis: Catholic schools that want universal pre-K must not discriminate*, Fox 31 (Aug. 17, 2023), https://kdvr.com/news/local/colorado-universal-preschool-catholic-lawsuit-polis/.

## SUMMARY OF FACTS

Darren Patterson Christian Academy is a "distinctly Christ-centered" pre-K through 8th grade school that educates students through the lens of its Christian faith. VC ¶¶ 30–43. The school's Christian faith—including its beliefs on sexuality and gender—permeates everything it does, including its internal policies for students and staff and its employment and hiring policies. *Id.* ¶¶ 52–60. As a result, the school requires *all* staff (whether considered "ministerial" or not) to be coreligionists and to share and live out its Christian beliefs. *Id.* ¶¶ 64–69. And the school's internal policies on bathroom usage, pronoun usage, dress code, and student lodging during field trips and expeditions are based on the person's biological sex, not gender identity. *Id.* ¶¶ 61–63, 116.

When Colorado rolled out its new Universal Preschool Program ("the Program"), Darren Patterson Christian Academy was excited for its Busy Bees preschool to participate. The school signed up and was matched with students and families who picked the school as one of their top choices. *Id.* ¶¶ 97–99. Excitement soon turned to disappointment, however, when the school learned that the Department required the school to forgo its religious beliefs and exercise to participate. The Department's Program Agreement requires the school to comply with—and affirmatively *agree* that it will comply with—two provisions that prohibit the school from having and following its religiously based internal and employment policies. *See id.* ¶¶ 88–91; Colo. Rev. Stat. § 26.5-4-205(2)(b) and VC, Ex. 6 at 2 (the Quality Assurance Provision); VC, Ex. 6 at 27 (the Blanket Provision).

Because Darren Patterson Christian Academy cannot violate its religious beliefs, it raised the issue with the Department in May 2023. VC ¶ 107; *id.*, Ex. 10. Other faith-based schools did the same. *Id.*, Ex. 8. Darren Patterson Christian

Academy explained how the rules would interfere with its internal and employment policies and asked for a "religious exemption" that would allow it to participate in the Program "without agreeing to those provisions." *Id.*, Ex. 10. Defendant Roy responded that the Department would not provide an exemption and that all schools must comply with the rules. *Id.*

Following the Department's denial, Darren Patterson Christian Academy faced a dilemma: get rid of its religiously based policies so it could participate in the Program *or* miss out on participating in a generally available public program. Because putting the school to that choice is itself unconstitutional, Darren Patterson Christian Academy sought redress in this Court.

## **ARGUMENT**

### I. **The school has standing because the challenged rules credibly threaten and chill its religious speech and exercise.**

For standing, Darren Patterson Christian Academy must show injury, causation, and redressability. *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 157–58 (2014) ("*SBA List*"). Here, the Department really only questions injury.[3] *See* MTD 10–14. It claims the school cannot seek judicial relief until it first affirms compliance with the challenged rules, faces a complaint and investigation, and then is sued by the Department for breach of contract. *See id.* 8–10; Defs' Resp. 4–5. But

---

[3] The Department mentions causation and redressability in just two sentences, *see* MTD 12, but those elements are easily satisfied. Causation is met because "the named defendants . . . possess authority to enforce the complained-of provision[s]," *Bronson v. Swensen*, 500 F.3d 1099, 1110 (10th Cir. 2007), and redressability is met because "a favorable judgment would meaningfully redress the [school's] injury," *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1098 (10th Cir. 2006), by allowing the school to participate in the Program without having to violate its religious beliefs and exercise.

the law says otherwise: A plaintiff need not "first expose" itself to "prosecution" to have standing. *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). And especially so in "the First Amendment context," where "unique interests" lead courts to analyze standing "more leniently." *Peck*, 43 F.4th at 1129.

Rather, Darren Patterson Christian Academy need only show a "substantial risk" of the challenged rules harming it. *SBA List*, 573 U.S. at 158 (cleaned up). Not a certainty of prosecution; only "an objectively justified fear of real consequences." *Peck*, 43 F.4th at 1132 (cleaned up). The school has done that because it intends "to engage in a course of conduct arguably affected with a constitutional interest," its activities are "arguably" proscribed by the challenged rules, and it faces "a credible threat of prosecution." *SBA List*, 573 U.S. at 159 (cleaned up). Although the Department contests the credible threat prong, MTD 12–13; Defs' Resp. 6–8, "this is not supposed to be a difficult bar for plaintiffs to clear in the First Amendment pre-enforcement context," *Peck*, 43 F.4th at 1133.

### A.   The school faces a credible threat because the challenged rules plainly proscribe the school's religious speech and exercise.

To determine standing, this Court must "begin" with the challenged rules' "language and scope." *Peck*, 43 F.4th at 1124–25. That is because the "threat of prosecution is generally credible where a challenged provision on its face proscribes the conduct in which a plaintiff wishes to engage." *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 901 (10th Cir. 2016) (cleaned up); *accord Alexis Bailly Vineyard, Inc. v. Harrington,* 931 F.3d 774, 778 (8th Cir. 2019) ("[W]hen a course of action is within the plain text of a statute, a credible threat of prosecution exists." (cleaned up)). The challenged rules do precisely that here.

Start with the Quality Assurance Provision. That rule, which is statutorily mandated, requires participating preschools to "provide eligible children an equal opportunity to enroll and receive preschool services regardless of . . . religious affiliation, sexual orientation, [or] gender identity." VC, Ex. 6 at 2; Colo. Rev. Stat. § 26.5-4-205(2)(b). But Darren Patterson Christian Academy provides preschool services consistently with its religious beliefs, including those related to sexuality and gender. So while all children are welcome to enroll, the school's policies on bathroom usage, pronoun usage, dress codes, and student lodging are based on "biological sex," not gender identity. Drexler Decl. ¶¶ 6, 20, ECF No. 14-1.

The Department does not dispute that the Quality Assurance Provision forbids the school's policies. Nor could it. The Department considered those exact policies when it denied the religious exemption, VC, Ex. 10, and the State enforces nearly identical nondiscrimination provisions precisely how the school fears, *see* Colo. Code Regs. § 708-1:81.9(B) (individuals must be allowed "use of gender-segregated facilities that are consistent with their gender identity"); *id.* § 708-1:81.6(A)(4) (unlawful harassment to "[d]eliberately misus[e] an individual's preferred name, form of address, or gender-related pronoun"); *id.* § 708-1:81.8 (entity "shall not require an individual to dress or groom in a manner inconsistent with the individual's gender identity").

Next consider the Blanket Provision. That rule amplifies and adds to the threat by prohibiting discrimination against "any person" based on "religion," "sexual orientation," or "gender identity." VC, Ex. 6 at 27. So it not only forbids the internal school policies identified above, but it also interferes with the school's employment practices. This includes the school asking employees to agree to a

"Lifestyle Statement," which conditions employment on being a Christian and abstaining from sexual activity outside of biblical marriage. VC, Ex. 5 at 16.

Again, the Department does not dispute any of this. It argues instead that the school lacks standing to challenge these rules because there can be no credible threat of enforcement until there is first a discrimination complaint, investigation, and adverse determination. MTD 8–10; Defs' Resp. 4– 5. But that isn't true as a matter of law or fact.

On the law, the school does not have to first subject itself to "penalty" or be "explicitly threatened" with a complaint to have standing. *Peck*, 43 F.4th at 1129. If that were the case, pre-enforcement lawsuits would not exist. No matter how unconstitutional a law might be, a plaintiff would have to roll the dice and wait for the government to drop the hammer. But courts—including the Supreme Court and Tenth Circuit—routinely decide pre-enforcement cases. *See*, *e.g.*, *SBA List,* 573 U.S. at 158–59; *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383 (1988); *303 Creative LLC v. Elenis*, 6 F.4th 1160 (10th Cir. 2021), *rev'd on other grounds*, 143 S. Ct. 2298 (2023). In fact, just two weeks ago, the Tenth Circuit again found that a plaintiff had standing to challenge a law's constitutionality even though "[n]o one has brought an enforcement action." *Colo. Union of Taxpayers, Inc. v. Griswold*, No. 22-1122, 2023 WL 5426581, at *1 (10th Cir. Aug. 23, 2023).

On the facts, no complaint is needed for the school to be penalized. The Program Agreement authorizes the Department, "in its discretion," to "immediately terminate the Agreement" or "institute any other remedy in the Agreement in order to protect the public interest of the State." VC, Ex. 6 at 17. And the Department doesn't even have to provide "notice or a cure period." *Id.* Put simply, the challenged

rules apply right now, and the school can be penalized at any time for violating them. That is a credible threat.

The lack of past "discipline[ ]," MTD 12; Defs' Resp. 7–8, does not change the analysis either. The Program is new for this upcoming school year, so there of course could be no past enforcement. And when a challenged law is "recently enacted" and "not moribund," its "existence alone may create a threat that is credible enough to create standing." *Brown v. Herbert*, 850 F. Supp. 2d 1240, 1248 (D. Utah 2012); *Rocky Mountain Gun Owners v. Polis*, No. 23-cv-01077, 2023 WL 5017253, at *7 (D. Colo. Aug. 7, 2023) (credible threat where "the statute is new").

What's more, the Department's theory ignores that investigations alone will harm the school. *SBA List*, 573 U.S. at 165–66 (threat of commission investigation created harm). As the Supreme Court has recognized, "[i]t is not only the conclusions" that "may impinge on rights guaranteed by the Religion Clauses, but also the very process of inquiry leading to findings and conclusions." *N.L.R.B. v. Catholic Bishop of Chicago*, 440 U.S. 490, 502 (1979). Subjecting the school to long and burdensome investigations would force the school "to divert significant time and resources" away from other areas, thereby harming its religious and educational mission. *SBA List*, 573 U.S. at 165. And the "[f]ear of potential liability" accompanying such investigations could "affect the way [the school] carried out what it understood to be its religious mission," since the school would "understandably be concerned" that government investigators will "not understand its religious tenets and sense of mission." *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 336 (1987). Because the Department promises to undertake such investigations, MTD 9, 16; Defs' Resp. 10–11, the school needs relief and clarity now, before facing these intrusive inquiries.

**B.      Other factors confirm the credible threat of enforcement.**

Several other factors bolster Darren Patterson Christian Academy's standing.

### 1.  The rules can be enforced against the school at any time, including by third parties.

In analyzing whether a credible threat of enforcement exists, courts also consider whether "the authority to file a complaint extends beyond prosecutors and agencies to any person." *Colo. Union of Taxpayers, Inc.*, 2023 WL 5426581, at *4.

Here, virtually anybody can file a complaint and enforce the challenged rules against the school. The Program Agreement states that "[a]ny person who thinks he/she has been discriminated against as related to the performance of the Agreement" may "assert a claim." VC, Ex. 6 at 28. And by citing the Colorado Anti-Discrimination Act, *id.*, the Agreement opens the door for disgruntled individuals and activists to file separate state-court actions that threaten the school with fines, cease-and-desist orders, and burdensome reporting and re-education conditions. Colo. Rev. Stat. §§ 24-34-306(9), 24-34-307, 24-34-602. This "enhanc[es] the credibility of the [school's] fear." *Colo. Union of Taxpayers, Inc.*, 2023 WL 5426581, at *4.

In *SBA List*, the Supreme Court explicitly relied on the fact that "any person" could file a complaint under Ohio's campaign false statements law to find standing. 573 U.S. at 164. Noting that the "universe of potential complainants" under that law was not "restricted to state officials," the Court explained there was "a real risk of complaints from . . . political opponents." *Id.* Same here. "Any person" who "thinks" he has been discriminated against can file a complaint against the school. VC, Ex. 6 at 28.[4]

---

[4] The Department's assertion that it is the "only" governmental "entity" that can enforce the challenged rules, MTD 12; Defs' Resp. 7–8, misses the mark because the possibility of third-party complaints independently "bolster[s]" the threat of enforcement. *SBA List*, 573 U.S. at 164.

### 2. The State has not disavowed enforcement against the school's internal policies.

A credible threat of enforcement also exists when the government fails to disavow future enforcement. *SBA List*, 573 U.S. at 165; *Peck*, 43 F.4th at 1132. And here, the Department has repeatedly refused to disavow enforcement against the school's internal policies both before and after the filing of this lawsuit.

Before suing, Darren Patterson Christian Academy described its internal policies to the Department, explained how the challenged rules restricted those policies, and requested a religious exemption. Yet the Department refused to grant one, telling the school it could not "discriminate against children or families in violation of state statute." VC, Ex. 10. The Department told other faith-based preschools the same thing: a religious exemption would be "inconsistent" with the underlying statute "and therefore void." VC, Ex. 9 at 1.

Even after being sued, the Department's position remains the same. It still has not disavowed enforcement against the school's internal policies, saying only that it will "investigate[ ] and substantiate[ ]" complaints involving the school's restroom, pronoun, dress code, and student-lodging policies "before taking action against it." MTD 15–16. Such "staunch" refusals to disavow enforcement—both before the filing of this case and after—carry "heavy weight." *Peck,* 43 F.4th at 1133.

### 3. The State's limited "disavowal" for the school's employment practices is insufficient.

Nor has the Department meaningfully (or believably) disavowed enforcement against the school's religious employment practices. To be sure, the Department claims (for the first time) that it will interpret the Blanket Provision to respect the school's religious freedom. MTD 13; Defs' Resp. 8. But the Department promises to

withhold punishment only if it believes the school's employment decisions "comply with federal law." Defs' Resp. 8. That condition makes all the difference.

For one thing, it confuses more than clarifies. The Blanket Provision says nothing about federal law, and the Department doesn't specify which federal law it has in mind (is it Title VII?). By being intentionally vague, the Department takes an otherwise unambiguous provision and makes it ambiguous.[5] But creating ambiguity does not eliminate the threat; it exacerbates it. *See Høeg v. Newsom*, No. 2:22-cv-01980, 2023 WL 414258, at *4 (E.D. Cal. Jan. 25, 2023) (holding that plaintiffs' "fear is especially reasonable" given challenged law's "ambiguity"). And the school of course "has no guarantee that the [Department] might not tomorrow bring its interpretation more in line with the provision's plain language." *N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 711 (4th Cir. 1999).

In any event, the State's view of federal law solidifies the school's credible threat. Just last year, the State joined an amicus brief arguing that a Catholic school's employment decision that was based on its beliefs about same-sex marriage was "not shielded from liability by Title VII's limited exemptions for religious organizations, by the doctrine of church autonomy, or by the Religious Freedom Restoration Act." Brief for Amicus Curiae States at 2 n.3, *Billard*, No. 22-1440, 2022 WL 17415729.

Like that Catholic school, Darren Patterson Christian Academy expects *all* employees to share and follow its religious beliefs, including those about marriage

---

[5] The Department is no doubt aware that courts are split on whether "a religious reason for an employment decision [can] bar a plaintiff's Title VII claim when the religious reason *also* implicates another protected class[.]" *Starkey v. Roman Catholic Archdiocese of Indianapolis, Inc.*, 496 F. Supp. 3d 1195, 1203 (S.D. Ind. 2020).

and sexuality. VC ¶¶ 68–69, 135–140. This expectation applies to both the school's ministerial and non-ministerial employees. *Id.* ¶¶ 65, 68; Suppl. Drexler Decl. ¶ 18. So rather than destroy standing, the Department's federal-law qualifier "undercuts" its own "argument that [the school's] perception of a threat of prosecution is not objectively justifiable." *Peck*, 43 F.4th at 1133; *see also Wilson v. Stocker*, 819 F.2d 943, 947 n.3 (10th Cir. 1987) (disavowal mentioning only some but not all of the plaintiff's desired activity is insufficient).

In sum, contradictory, "equivocating," non-binding, and litigation-driven statements like the one the Department gives here neither negate the credible threat, *Wilson*, 819 F.2d at 947 n.3, nor "overcome the chilling effect of the statute's plain language," *Citizens for Responsible Gov't State PAC v. Davidson*, 236 F.3d 1174, 1192 (10th Cir. 2000). Such "in-court assurances" also "do not rule out the possibility that [the Department] will change its mind and enforce the [rules] more aggressively in the future." *Rodgers v. Bryant*, 942 F.3d 451, 455 (8th Cir. 2019).

## II. This case is ripe because it raises primarily legal issues and the school faces a direct and immediate dilemma.

Moving from standing, the Department asserts that this case is not ripe. Defs' Resp. 9–13. But this objection is prudential, not jurisdictional. *SBA List*, 573 U.S. at 167. And once jurisdiction is established, "a federal court's obligation to hear and decide cases . . . is virtually unflagging." *Id.* (cleaned up). In any event, the school satisfies the requirement. The two central factors for prudential ripeness are "the fitness of the issue[s] for judicial resolution" and "the hardship to the parties of withholding judicial consideration." *Peck*, 43 F.4th at 1133 (cleaned up). The test is not "rigid or mechanical" but "relaxed" in First Amendment cases like this one. *Id.* (cleaned up).

First, the case is fit for decision because the challenged rules are plain on their face, and the school has provided the policies and employment practices that violate them. VC ¶¶ 60–72, 118–121. The Department cannot deny this, so it notes instead that it has not yet "begun rulemaking" or taken "final" action against the school. MTD 15. But the challenged rules apply to *this year's* Program, and both the Program Agreement and underlying statute say that any future quality standards must, "[a]t a minimum," include the Quality Assurance Provision's nondiscrimination rule. VC, Ex. 6 at 2; Colo. Rev. Stat. § 26.5-4-205(2)(b). And finality for purposes of the ripeness analysis merely considers whether the challenged rules "have the force of law before their sanctions are invoked as well as after," *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 150 (1967), which the challenged rules undeniably do.

This case asks whether the Department can forbid the school from aligning its internal policies and employment practices with its religious beliefs, including those related to sexuality and gender. This legal question needs no "[f]urther factual development," *Awad v. Ziriax*, 670 F.3d 1111, 1125 (10th Cir. 2012), and "does not depend on any uncertain, contingent future events," *Initiative & Referendum Institute v. Walker*, 450 F.3d 1082, 1098 (10th Cir. 2006). The case is fit for review.

Second, withholding judicial review would also cause great hardship to Darren Patterson Christian Academy. Complying with the challenged rules is a condition to Program participation, and the rules extend to every aspect of the school's operations—not just preschool enrollment. Plus, the Department can kick the school out of the Program without "notice or a cure period," VC, Ex. 6 at 17, and anyone who "thinks" he has been discriminated against can file a complaint, *see supra* § I.B.1. The school deserves to know now whether it can follow its religious beliefs and practices without facing penalty or punishment.

13

*Peck* proves the point. There, an attorney brought a pre-enforcement challenge to a Colorado law prohibiting the disclosure of information from child abuse records. *Peck*, 43 F.4th at 1122–24. The Tenth Circuit held that the attorney faced a credible threat of enforcement, giving her standing. *Id.* at 1132–33. That "specter of prosecution" also created a "direct and immediate dilemma" even though she did not have any current confidential information that she desired to disclose. *Id.* at 1134.

Just like the attorney there who was "likely to confront a scenario where she has to choose between either following the law" or exercising her free speech rights by "making her desired disclosures," the school here must choose between following its religious beliefs and complying with the Department's rules. *Id.* That choice creates "a direct and immediate dilemma" justifying judicial review. *Id.*

## III. The school is entitled to a preliminary injunction.

Having satisfied Article III, the school is entitled to a preliminary injunction. The Department does not contest the merits, effectively conceding the school is likely to succeed on its claims. And "[i]n the First Amendment context," that is "determinative." *Verlo v. Martinez*, 820 F.3d 1113, 1126 (10th Cir. 2016).

Yet while "no further showing of irreparable injury is necessary," *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001), the school has shown that the challenged rules subject it to additional harm. *See* Pl.'s Mot. for Prelim. Inj. 19–20, ECF No. 14. The Department tries to downplay all this by pointing out that the school is currently in the Program and just received its first tuition payment. Defs' Resp. 14. But the whole point of this lawsuit is to determine whether the school can *remain* in the Program without being asked to violate its religious beliefs. And until the school has that clarity, it cannot in good faith use the deposited funds. Suppl. Drexler Decl. ¶¶ 2–6.

This, in turn, has caused financial hardship. *Id.* ¶¶ 7–8. Like most entities, the school plans its budget ahead of time. *Id.* ¶¶ 9–10. The threat of losing tens of thousands of dollars in expected tuition hampers the school's ability to undertake other projects because the school must set aside funds to cover the cost of tuition for those students matched to it through the Program. *Id.* ¶¶ 11–17. For example, because the school has had to reserve its own funds, it has reduced the number of students it can accommodate through the Program, refrained from hiring more staff, and forgone possible facility upgrades. *Id.* All this hamstrings the school's religious mission. *Id.* And because the school cannot recover monetary damages, its injury is irreparable. *See Chamber of Com. of U.S. v. Edmondson,* 594 F.3d 742, 770–71 (10th Cir. 2010) ("Imposition of monetary damages that cannot later be recovered for reasons such as sovereign immunity constitutes irreparable injury.").

The remaining factors also support a preliminary injunction. Whatever interests the government might have "do not outweigh a plaintiff's interest in having its constitutional rights protected." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013) (cleaned up). And the public interest would be served by an injunction because the public would "get what they are entitled to— clarity on an issue that implicates fundamental constitutional rights." *Hill v. Williams*, No. 16-cv-02627-CMA, 2016 WL 8667798, at *11 (D. Colo. Nov. 4, 2016). Indeed, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Hobby Lobby*, 723 F.3d at 1147 (citation and quotation marks omitted).

**CONCLUSION**

For all these reasons and the reasons set forth in Plaintiff's Motion for Preliminary Injunction, the Court should grant the requested preliminary injunction and deny Defendants' Motion to Dismiss.

Respectfully submitted this 7th day of September, 2023,

s/ Jeremiah Galus
Jeremiah Galus
AZ Bar No. 30469
Ryan J. Tucker
AZ Bar No. 34382
David A. Cortman
GA Bar No. 188810
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
Telephone: (480) 444-0020
Email: jgalus@ADFlegal.org
        rtucker@ADFlegal.org
        dcortman@ADFlegal.org

Jacob E. Reed
VA Bar No. 97181
ALLIANCE DEFENDING FREEDOM
44180 Riverside Parkway
Lansdowne, VA 20176
Telephone: (571) 707-4655
Email: jreed@ADFlegal.org

*Counsel for Plaintiff*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1) and the Court's Order Setting Briefing Schedule and Hearing on Motion for Preliminary Injunction and Motion to Dismiss (ECF No. 32).

Dated:  September 7, 2023

<u>s/ Jeremiah Galus</u>
Jeremiah Galus
Attorney for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 7th, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated:  September 7, 2023

s/ Jeremiah Galus
Jeremiah Galus
Attorney for Plaintiff
