# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-01557-DDD-STV

**DARREN PATTERSON CHRISTIAN ACADEMY**

 Plaintiff,

v.

**LISA ROY**, in her official capacity as Executive Director of the Colorado Department of Early Childhood; and

**DAWN ODEAN**, in her official capacity as Director of Colorado's Universal Preschool Program,

 Defendants.

---

## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

PROCEDURAL BACKGROUND ................................................................................. 2

STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................... 4

LEGAL STANDARD ................................................................................................... 6

I.    The undisputed facts confirm that there has never been a credible risk of enforcement of Provision 18(B) against Plaintiff, and that Plaintiff failed to establish standing to raise Claims 1 and 4, in their entirety, and Claims 2, 3, 5, and 6, in part. ................................... 8

II.   In the alternative, because the Department has removed Provision 18(B) from its Program Agreement, Plaintiff's first and fourth claims are moot in their entirety, and Plaintiff's second, third, fifth, and sixth claims are moot in part ....................................................... 10

     A.    The Department's consistent disavowal of Provision 18(B) and its removal of the Provision 18(B) language from the 2024-25 Agreement and onward are complete and sincere such that the possibility of that Provision's recurrence is no more than a speculative contingency. ....................................................................... 12

     B.    Each claim raised in Plaintiff's Complaint has been either partially, or entirely, mooted by the Department's disavowal and removal of Provision 18(B).......... 16

CONCLUSION ............................................................................................................ 17

## TABLE OF AUTHORITIES

**Cases**

*Abbott Lab'ys v. Gardner*, 387 U.S. 136 (1967) ............................................................... 9

*Alvarez v. Smith*, 130 S. Ct. 576 (2009) ..........................................................................11

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) .................................................. 6, 7

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) ......................................... 7

*Att'y Gen. of Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769 (10th Cir. 2009) ............... 10

*Baker v. Carr*, 369 U.S. 186 (1962) ................................................................................... 8

*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869 (10th Cir. 2004) ......................................... 7

*Brown v. Buhman*, 822 F.3d 1151(10th Cir. 2016) ..............................6, 7, 11, 12, 13, 14

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .................................................................. 6

*Citizen Ctr. v. Gessler*, 770 F.3d 900 (10th Cir. 2014) ............................................ 12, 13

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ........................................................ 7

*Colo. Off-Highway Vehicle Coal. v. U.S. Forest Serv.*, 357 F.3d 1130 (10th Cir. 2004) ........... 7, 15

*Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992 (10th Cir. 2005) ................... 7

*Fleming v. Gutierrez*, 785 F.3d 442 (10th Cir. 2015) ...................................................... 15

*Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210 (10th Cir. 2002) ..................................... 7

*Habecker v. Town of Estes Park, Colo.,* 518 F.3d 1217 (10th Cir. 2008) ......................... 7

*Henderson v. Inter–Chem Coal Co., Inc.*, 41 F.3d 567 (10th Cir. 1994) .......................... 6

*Keyes v. Sch. Dist. No. 1, Denver, Colo.*, 119 F.3d 1437 (10th Cir. 1997) ...................... 8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........................................................ 7

*Peck v. McCann*, 43 F.4th 1116 (10th Cir. 2022) ............................................................. 9

*Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096 (10th Cir. 2010) ................
  7, 12, 13, 14, 15

*Schaffer v. Clinton*, 240 F.3d 878 (2001) ........................................................................ 8

*Sossamon v. Lone Star of Tex.*, 560 F.3d 316 (5th Cir. 2009) ...................................... 14

*Spokeo Inc. v. Robins*, 578 U.S. 330 (2016).................................................................. 8

*St. Mary's of Littleton v. Roy*, No. 23-cv-2079-JLK, (June 4, 2024) ................................. 6, 14, 15

*Tolan v. Cotton*, 134 S. Ct. 1861 (2014)........................................................................ 6

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) .................................................... 8

*Univ. of Tex. v. Camenisch*, 451 U.S. 390 (1981) ........................................................ 10

**Statutes**

§ 26.5-1-106(1)(a)(1), C.R.S. (2022) ..........................................................................9, 11

§ 26.5-4-201, C.R.S. (2022)..........................................................................................11

§ 26.5-4-205(2)(b), C.R.S. (2022) ...............................................................................11

§ 26.5-4-205(2)(b), C.R.S. (2022). ............................................................................. 5

House Bill 22-1295 ......................................................................................................11

**Rules**

Fed. R. Civ. P. 56(a) .................................................................................................. 6

The Plaintiff's Complaint alleges in part that Paragraph 18(B) of the 2023-24 Universal Preschool Program Service Agreement (referred to by the Plaintiff as the "Blanket Provision") violates DPCA's First Amendment rights by preventing the Plaintiff from exercising complete discretion in hiring ministerial employees and co-religionists for non-ministerial positions. *See* ECF No. 1 at ¶ 110, 119.

The undisputed facts establish that Provision 18(B) appeared in the 2023-24 Universal Preschool Program ("UPK" or "Program") Service Agreement ("2023-24 Agreement") as part of a pre-existing template created and used by other agencies for other programs; that the Colorado Department of Early Childhood ("Department") has never enforced Provision 18(B); that Defendants have consistently disavowed the enforcement of Provision 18(B) against religious providers, such as Plaintiff, that hire co-religionists or ministerial employees in accordance with federal law; that Plaintiff has not changed its employment practices or employment decisions based on concerns over Provision 18(B); that Provision 18(B) is not in the 2024-25 UPK Service Agreement ("2024-25 Agreement"); and that Defendants do not intend to include Provision 18(B) in any future agreements.

Defendants' position remains that there has never been a credible risk of enforcement of Provision 18(B) and thus that the Plaintiff failed to establish standing to raise claims challenging that provision at the time the Complaint was filed. The undisputed facts developed since this Court's ruling on the Plaintiff's Motion for a Preliminary Injunction further confirm the absence of a credible threat of enforcement at any time. In the alternative, Defendants contend that all claims related to Provision 18(B) are now moot.

Pursuant to Fed. R. Civ. P. 56, Dr. Lisa Roy, in her official capacity as Executive Director of the Department, and Dawn Odean, in her official capacity as Director of Colorado's Universal Preschool Program (collectively, the "Defendants"), through the Colorado Attorney General, move for partial summary judgment on the claims challenging Paragraph 18(B). More specifically, Defendants seek summary judgment in their favor on Counts 1 and 4 of the Complaint in their entirety and seek summary judgment for the portions of Counts 2, 3, 5, and 6 that concern Provision 18(B).

## PROCEDURAL BACKGROUND

Darren Patterson Christian Academy ("DPCA") filed the Complaint in this case on June 20, 2023. ECF No. 1. DPCA alleges that Paragraph 18(B) of the 2023-24 Agreement, as follows, restricts its employment practices in violation of its First Amendment rights:

B. Discrimination

Provider shall not:

i. discriminate against any person on the basis of gender, race, ethnicity, religion, national origin, age, sexual orientation, gender identity, citizenship status, education, disability, socio-economic status, or any other identity.

ii. exclude from participation in, or deny benefits to any qualified individual with a disability, by reason of such disability.

Ex. 6 (2023-24 Agreement) at 27.

Counts 1 and 4 of the Complaint are based entirely on Provision 18(B). Count 1 alleges that Provision 18(B) violates DPCA's religious autonomy because it prevents DPCA from hiring only those who agree with its religious beliefs. ECF No. 1 at ¶ 140. Count 4 alleges that DPCA's expressive association rights under the First Amendment are violated because Provision 18(B) prevents it from hiring "like-minded believers." ECF No. 1 at ¶ 161. These two counts focus

only on Provision 18(B). Counts 2, 3, 5, and 6, which respectively allege violations of the free exercise, free speech, and equal protection clauses of the First Amendment, are partially concerned with Provision 18(B).

Plaintiff filed a Motion for a Preliminary Injunction on July 10, 2023. ECF No. 14. Defendants moved to dismiss the Complaint for lack of standing and ripeness on August 7, 2023. ECF No. 28. In a declaration attached to the Motion to Dismiss, Defendant Odean disavowed enforcement of Provision 18(B) against religious providers, such as Plaintiff, that hire co-religionists and ministerial employees in accordance with federal law. ECF No. 28-1 at ¶¶ 26-27. Following an evidentiary hearing, this Court denied Defendants' Motion to Dismiss and granted Plaintiff's Motion for a Preliminary Injunction on October 20, 2023. ECF No. 53.

Since that Order, the Department has finalized and released UPK's 2024-25 Agreement, which does not contain Provision 18(B). Ex. 1063 (2024-25 Agreement). Both parties have engaged in discovery, including eight fact-witness depositions taken by Plaintiff and four taken by Defendants. This deposition testimony—as well as testimony given in a three-day trial before Judge John Kane in January 2024, concerning claims in an unrelated case that also included challenges to Provision 18(B), confirms that Paragraph 18(B) was not included in the 2023-24 Program Service Agreement with the intent to engage in the challenged conduct, that the Department did not enforce Provision 18(B) during the 2023-24 school year and has never enforced it against any provider, and does not intend to add Provision 18(B) into future Agreements.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      The 2023-24 school year was the first in the implementation of the Universal Preschool Program after Coloradans voted to create the Program in Proposition EE. Ex. 1064 Deposition of M. Michael Cooke ("Cooke Dep.") at 9:18-11:5 (describing creation of new department); Ex. 1065, Deposition of Dawn Odean ("Odean Dep.") at 10:6-7.

2.      The UPK Program is unique among the few states that have implemented universal preschool programs in that it mandates a "mixed-delivery" system that includes both public and private providers, including faith-based providers. Ex. 1065, Odean Dep. at 56:11-14; Ex. 1066, Deposition of Timothy Derocher ("Derocher Dep.") at 25:6-12.

3.      The Department did not come into being until July 1, 2022, and at the time the 2023-24 Agreement was drafted, the Department did not have its own procurement personnel. Ex. 1064, Cooke Dep. at 25:14-18; Ex. 1066 Derocher Dep. at 44:6-13.

4.      Other long-established state agencies drafted the initial 2023-24 UPK Service Agreement based on an old template and had final approval over the contract and its terms.  Ex. 1064 Cooke Dep. at 25:14-22, 30:4-5 ("The Department [CDEC] was never in a position to individualize this agreement."); Ex. 1066 Derocher Dep. at 56:1-10 (Provision 18(B) came from "a very, very old template" and was boilerplate); Ex. 1067, Deposition of Dr. Lisa Roy ("Roy Dep.") at 16:3-10 (CDEC did not have final approval authority over the content of the 2023-24 Agreement); Ex. 1068, Trial Tr., *St. Mary's of Littleton v. Roy*, No. 23-cv-2079-JLK, (Jan. 3, 2024) Testimony of Dawn Odean ("Odean Testimony") at 231:20-232:8.

5.      The Department has disavowed enforcement of Provision 18(B) against religious providers, such as Plaintiff, that hire co-religionists and ministerial employees in accordance

4

with federal law from the inception of this litigation. Ex. 1065 Odean Dep. at 88:11-15, 94:18-25; Ex. 1066 Derocher Dep. at 55:4-6; ECF 28-1, Declaration of Dawn Odean in Support of Motion to Dismiss (Aug. 7, 2023) at ¶ 27; Ex. 1068, Odean Testimony at 232:9-15.

6.      Provision 18(B) is not required by the UPK statute. *See* Colo. Rev. Stat. § 26.5-4-205(2)(b).

7.      The Department created a new Program Service Agreement for the 2024-25 school year. Ex. 1066, Derocher Dep. at 45:11-13.

8.      The 2024-25 Agreement is effective July 1, 2024, and replaces the 2023-24 Agreement in its entirety. *Id.* at 20-22; Ex. 1063 (2024-25 Agreement).

9.      DPCA's 2023-24 school year has ended, and the Busy Bees 2024-25 school year will begin on August 27, 2024. Ex. 1069, Screenshot of DPCA's website, https://www.dpcaweb.org/_files/ugd/8cb1b3_d44e79e1e70548e5abe8e4bf968c5c1d.pdf (accessed June 21, 2024).

10.      DPCA has not changed its employment practices or employment decisions based on concerns over Provision 18(B).  Ex. 1070, Hearing Tr., *Darren Patterson Christian Academy v. Roy*, No. 23-cv-1557-DDD, (Oct. 5, 2023), Testimony of Joshua Drexler, the head of school at DPCA, ("Drexler Testimony") at 30:20-25.

11.      Provision 18(B) is not included in the 2024-25 Agreement. Ex. 1065, Odean Dep. at 95:16-20; Ex. 1066 Derocher Dep. at 56:7-10; Ex. 1063 (2024-25 Agreement).

12.      The 2024-25 Agreement has been distributed to UPK providers for the upcoming school year and is not subject to further changes. Ex. 1071 (2024-25 UPK Provider Handbook at 39, stating that providers must email the Department with an "Affirmative acknowledgement that the provider accepts the Provider Agreement as written.").

13.     The Department has no intention of adding Provision 18(B) back in the UPK contract. Ex. 1065, Odean Dep. at 95:16-20; Ex. 1068, Odean Testimony at 232:16-22.

14.     Provision 18(B) was not enforced against any provider during the 2023-24 school year. Ex. 1066, Derocher Dep. 50:16-24.

15.     The Hon. John Kane found that the "uncontroverted evidence" showed that "…Paragraph 18(B) was not included with the intent to engage in the challenged conduct" and that the Department's disavowal of Provision 18(B) was "complete and sincere." Ex. 1072, Order, *St. Mary's of Littleton v. Roy*, No. 23-cv-2079-JLK, (June 4, 2024) at 41-42.

## LEGAL STANDARD

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). A "judge's function" at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Anderson v. Liberty Lobby*, *Inc.,* 477 U.S. 242, 249 (1986)).

Along with the other justiciability doctrines, the doctrines of standing and mootness keep federal courts within their constitutional bounds. *Brown v. Buhman*, 822 F.3d 1151, 1163 (10th Cir. 2016). "Standing concerns whether a plaintiff's action qualifies as a case or controversy when it is filed; mootness ensures it remains one at the time a court renders its decision." *Id*. As the Tenth Circuit explained, the Supreme Court has provided the following descriptions of standing and mootness, and how they relate: "'[t]he requisite personal interest that must exist at

the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Id.* (citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997)). To survive a summary judgment motion, the plaintiff's assertion of standing must be supported by affidavit or other evidence specific facts to support its claim. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412 (2013) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

"Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010) (quoting *Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005)). Unless there is a live controversy, a judge "lack[s] jurisdiction to consider claims no matter how meritorious." *Id.* (quoting *Habecker v. Town of Estes Park, Colo.,* 518 F.3d 1217, 1223 (10th Cir. 2008)). A claim becomes moot "when it is impossible for the court to grant any effectual relief whatsoever to a prevailing party." *Colo. Off-Highway Vehicle Coal. v. U.S. Forest Serv.*, 357 F.3d 1130, 1133 (10th Cir. 2004).

In reviewing a motion for summary judgment, the court views all evidence in the light most favorable to the non-moving party. *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002). However, the non-moving party "may not rest upon mere allegation or denials of [the] pleadings but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Conclusory statements based merely on speculation, conjecture, or subjective belief are not competent summary judgment evidence. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

I. **The undisputed facts confirm that there has never been a credible risk of enforcement of Provision 18(B) against Plaintiff, and that Plaintiff failed to establish standing to raise Claims 1 and 4, in their entirety, and Claims 2, 3, 5, and 6, in part.**

There has never been a credible risk of enforcement of Provision 18(B) sufficient to confer this Court with subject matter jurisdiction because the undisputed evidence shows that Paragraph 18(B) was not included in the UPK contract with an intent to engage in the challenged conduct and that the Defendants have consistently disavowed the challenged conduct and have never engaged in that conduct. SUMF ¶ 3-5.

A plaintiff has the burden to show an invasion of a legally protected interest that is concrete and particularized, and actual or imminent, not conjectural or hypothetical. *Spokeo Inc. v. Robins*, 578 U.S. 330, 339 (2016). The touchstone of this inquiry is whether a plaintiff suffers concrete harm. "No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021). Justiciability requirements serve several key functions; these requirements, including standing, ensure quality judicial decision making by requiring that federal courts are presented only with concrete controversies that "sharpen[] the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions[.]" *Schaffer v. Clinton*, 240 F.3d 878, 883 (2001) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). The requirement that a party have standing to bring its claims also avoids the unwise use of scarce judicial resources to resolve speculative or conjectural disputes that may never come to fruition. *See Keyes v. Sch. Dist. No. 1, Denver, Colo.*, 119 F.3d 1437, 1443 (10th Cir. 1997) ("The case or controversy requirement of Article III admonishes federal courts to avoid 'premature adjudication' and to abstain from 'entangling themselves in abstract disagreements'") (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148 (1967)).

For these reasons, to establish standing in a pre-enforcement action alleging a First Amendment violation, a plaintiff must allege, among other things, "a credible threat of prosecution" and "ongoing injury resulting from the statute's chilling effect on his desire to exercise his First Amendment rights." *Peck v. McCann*, 43 F.4th 1116, 1129 (10th Cir. 2022) (citations omitted).

Plaintiff failed to establish a credible threat of enforcement with respect to Provision 18(B) at the time its complaint was filed, or at any time thereafter. The undisputed facts establish that Provision 18(B) was not included in the 2023-24 UPK contract with the intent to engage in the challenged conduct, as the Department then had no procurement personnel of its own and the initial UPK contract that included Provision 18(B) was thus based on a pre-existing template developed by another state agency for implementing programs entirely different from UPK. SUMF ¶¶ 3-4 (Colo. Rev. Stat. § 26.5-1-106(1)(a)(1) (2022); Ex. 1064 Cooke Dep. at 25:14-18; Ex. 1066 Derocher Dep. at 44:6-13.) The undisputed facts further establish that the Department has *never* had a practice or policy of enforcing Provision 18(B) against religious providers, such as Plaintiff, that hire co-religionists and ministerial employees in accordance with federal law. SUMF ¶ 3-5. In fact, the Department has *never* investigated or enforced Provision 18(B) against *any* UPK provider. SUMF ¶¶ 3-4, 14.  Moreover, the Department has consistently disavowed enforcement of Provision 18(B), and ultimately removed it from the Agreement altogether. SUMF ¶¶ 5, 7, 11.

For all these reasons, Defendants' position remains that there has never been a credible risk of enforcement of Provision 18(B) and thus that the Plaintiff failed to establish standing to

raise claims challenging that provision (Claims 1 and 4 in their entirety, and parts of claims 2, 3, 5, and 6) at the time it filed its complaint.

The undisputed facts developed since this Court's October 20, 2023 Order—when this Court found the disavowal made in Defendant Odean's initial declaration to be "too limited and unclear," ECF No. 53, Order re: Motion to Dismiss and PI at 18—provide additional and clearer support for the Department's original disavowal and confirm the absence of a credible threat of enforcement at any time. As the Supreme Court has explained, because preliminary injunctions are "customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits," courts do not require a moving party to "prove his case in full at a preliminary-injunction hearing" and "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) (citations omitted); *see also Att'y Gen. of Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 776 (10th Cir. 2009) (same). For the same reasons, such findings of fact and conclusions of law made by a court granting a preliminary injunction need not be binding for summary judgment purposes, and this Court remains free to revisit its earlier determinations at this time.

**II.     In the alternative, because the Department has removed Provision 18(B) from its Program Agreement, Plaintiff's first and fourth claims are moot in their entirety, and Plaintiff's second, third, fifth, and sixth claims are moot in part.**

Failure to satisfy the requirements of standing or mootness places a dispute outside of the reach of federal courts, as the Supreme Court has repeatedly held that Article III jurisdiction requires that an actual controversy must exist not only at the time the complaint is filed, but

through all stages of litigation. *Brown*, 822 F.3d at 1164 (citing *Alvarez v. Smith*, 130 S. Ct. 576, 580 (2009)).

What Plaintiff calls the "Blanket Provision" appeared as Provision 18(B) of the 2023-24 Agreement. The 2023-24 school year was the inaugural year of the Universal Preschool Program following the public's affirmative vote on Proposition EE to create the Program. SUMF ¶ 1 (Colo. Rev. Stat. § 26.5-4-201 *et seq.*) In developing the initial 2023-24 Agreement, the Department—an entirely new agency that did not come into being until July 1, 2022, after House Bill 22-1295 became law in April 2022—worked from a pre-existing template that included Provision 18(B); this template was developed by another state agency for implementing programs entirely different from UPK. SUMF ¶¶ 3-4 (Colo. Rev. Stat. § 26.5-1-106(1)(a)(1); Ex. 1064 Cooke Dep. at 25:14-18; Ex. 1066 Derocher Dep. at 44:6-13). As actual implementation of the new Program progressed, the Department determined that this provision was not necessary to achieve the program's objectives. SUMF ¶ 11. Nor does the Program's authorizing statute require such a provision. SUMF ¶ 6 (Colo. Rev. Stat. § 26.5-4-205(2)(b)). As such, the Department disavowed enforcement of Provision 18(B) against religious providers, such as Plaintiff, that hire co-religionists and ministerial employees in accordance with federal law in the 2023-24 Service Agreement and has now removed Provision 18(B) altogether. SUMF ¶¶ 5, 8 (Ex. 1065 Odean Dep. at 88:11-15, 94:18-25; Ex. 1066 Derocher Dep. at 55:4-6; ECF 28-1, at ¶ 27; Ex. 1068 Odean Testimony at 232:9-15; Ex. 1063 2024-25 Agreement).

DPCA faced no threat of enforcement under Provision 18(B) at any time in the Program's first year of operation (the 2023-24 school year), as evidenced by Defendant Odean's declaration, sworn under penalty of perjury, that: "The Department disavows enforcement of

Contractual Provision 18(B) against religious providers who hire co-religionists in accordance with federal law, and against religious providers' employment decisions involving their ministerial employees as protected by law." SUMF ¶ 5; ECF No. 28-1 Odean Decl. ¶¶ 26-27. For the upcoming 2024-25 school year, and going forward, there also is no threat of enforcement of Provision 18(B), as it has been removed entirely from the 2024-25 Agreement. SUMF ¶¶ 7-11.

DPCA bases all or part of each of its claims against the Department on a perceived threat of enforcement of Provision 18(B) against its employment practices. *See* ECF 1 at ¶¶ 140, 144-47, 151-57, 162-64, 168-70, 174-177. Without any threat having materialized over the past year, and with there being no possible threat going forward due to the removal of Provision 18(B), Plaintiff's claims pertaining to Provision 18(B) have become moot.

      A.     **The Department's consistent disavowal of Provision 18(B) and its removal of the Provision 18(B) language from the 2024-25 Agreement and onward are complete and sincere such that the possibility of that Provision's recurrence is no more than a speculative contingency.**

A government defendant's voluntary cessation moots a case when the challenged policy or procedure "is repealed and the government does not openly express intent to reenact it." *Citizen Ctr. v. Gessler*, 770 F.3d 900, 908 (10th Cir. 2014); *see also Brown*, 822 F.3d at 1167. Voluntary cessation of a challenged practice moots litigation only if it is clear that the defendant has not changed its practice simply to deprive the court of jurisdiction. *Rio Grande*, 601 F.3d at 1115. The party asserting mootness bears "the heavy burden of persuading" the court that the challenged conduct cannot reasonably be expected to start up again. *Id*. However, the Tenth Circuit has found that this "heavy burden frequently has not prevented governmental officials from discontinuing challenged practices and mooting a case." *Id*. at 1116; *see also Brown*, 822

F.3d at 1167 (noting that this "burden is not insurmountable, especially in the context of government enforcement").

Indeed, the government's voluntary cessation of a challenged practice "provides a secure foundation for mootness so long as it seems genuine." *Brown*, 822 F.3d at 1167-68 (quoting *Rio Grande*, 601 F.3d at 1118). As the Tenth Circuit has recognized*,* the government's alteration or withdrawal of its policy can moot a challenge to that policy when the possibility of recurrence is no more than "a speculative contingency." *Rio Grande*, 601 F.3d at 1117. There, the Tenth Circuit found no reasonable expectation that a challenged practice would recur when the government took "the concrete step" of changing its policy, rather than merely making promises. *Id*. at 1118.

Here, unlike many voluntary cessation cases where the defendant abandoned a practice in which it had previously engaged, the Department has *never* had a practice or policy of enforcing Provision 18(B) against religious providers, such as Plaintiff, that hire co-religionists and ministerial employees in accordance with federal law from the inception of this litigation. SUMF ¶ 5. In fact, the Department has *never* investigated or enforced Provision 18(B) against *any* UPK provider as that language came from boilerplate in a pre-existing contract template developed by other state agencies for other programs. SUMF ¶¶ 3-4, 14. The Department has consistently disavowed enforcement of Provision 18(B), and ultimately took the concrete step of removing it from the Agreement altogether. SUMF ¶¶ 5, 7, 11. Finally, no evidence indicates that the Department's removal was reluctant or that it seeks to reinstate Provision 18(B) at some future time. *See Citizen Ctr.*, 770 F. 3d at 908 (holding a case to be moot when there was no evidence that the government's change in practice was reluctant nor evidence of the government's desire

to return to its previous practice); *see also Rio Grande*, 601 F.3d at 1117-18 ("We will not require some physical or logical impossibility that the challenged policy will be reenacted absent evidence that the voluntary cessation is a sham for continuing possibly unlawful conduct") (quoting *Sossamon v. Lone Star of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009)).

Moreover, the Department's enforcement disavowal and its statement that it does not intend to reinstate the Provision in future Program Agreements were made in a sworn Declaration, in deposition testimony sworn under penalty of perjury, and under oath during trial testimony, further establishing that there is no reasonable expectation that Provision 18(B) will be included in future contracts. SUMF ¶¶ 5, 13 (Ex. 1065 Odean Dep. at 88:11-15, 94:18-25, 95:16-20, Ex. 1068 Odean Testimony at 232:9-22; Ex. 1066 Derocher Dep. at 55:4-6; ECF 28-1 at ¶ 27); *see also Brown,* 822 F.3d at 1171 (finding that the government's change in policy mooted a dispute in part because the governmental official communicated that change to a federal court in a sworn declaration and thus was unlikely to ignore or revoke the announced change). Nor does the presence of Provision 18(B) in the 2023-24 contract have any "lingering effects," *Rio Grande*, 601 F.3d at 1120, as Plaintiff has testified that it had no actual effects on its employment practices. SUMF ¶ 10 (Ex. 1070 Drexler Testimony at 30:20-25). Indeed, another federal court recently found the Department's disavowal of Provision 18(B) to be "complete and sincere," and that "[t]he possibility of Defendants implementing the same or a substantially similar policy to Paragraph 18(B) in the future is a speculative contingency, and any determination regarding that speculative policy would necessarily be advisory." SUMF ¶ 15 (Ex. 1070 Order, *St. Mary's of Littleton v. Roy*, No. 23-cv-2079-JLK, (June 4, 2024) at 42).

A case is live and not moot only if "granting a present determination of the issues offered will have some effect in the real world." *Fleming v. Gutierrez*, 785 F.3d 442, 444–45 (10th Cir. 2015) (quoting *Rio Grande*, 601 F.3d at 1110). Judge Kane's Order in the *St. Mary of Littleton v. Roy et al.* case, mentioned above, held that the Department's disavowal of Provision 18(B) meant that the plaintiffs in that case could not "point to [any] source of their alleged harm [and] determining the validity of Paragraph 18(B) will have no effect in the real world." *Id*. (citing *Fleming* 785 F.3d at 444–45); SUMF ¶ 15. In other words, it is "impossible for the court to grant any effectual relief whatsoever" with respect to DPCA's claims involving Provision 18(B). *See Colo. Off-Highway Vehicle Coal.* 357 F.3d at 1133 (holding that the plaintiff's challenge to a United States Forest Service (USFS) policy regarding the use of off-road vehicles on USFS land was mooted because the challenged policy had been replaced by a different policy such that it was no longer possible for the court to grant any effectual relief from the challenged policy). Here too, the Department's disavowal and removal of Provision 18(B) leaves Plaintiff without any source of alleged harm for its first and fourth claims and removes one of the sources cited in its second, third, fifth, and sixth claims.

Because Provision 18(B) was not included with the intent to engage in the challenged conduct, Defendant Odean has long disavowed its enforcement, the Provision 18(B) language was removed from the 2024-25 Agreement, the UPK statute does not require this provision as a condition of participation, and there is sworn testimony that the Defendants have no intent to reintroduce this language, DPCA faces no threat of enforcement under the "Blanket Provision." Because there is no danger of Provision 18(B)'s enforcement, Plaintiff's claims involving that provision are moot.

**B.     Each claim raised in Plaintiff's Complaint has been either partially, or entirely, mooted by the Department's disavowal and removal of Provision 18(B).**

Plaintiff's first claim concerns its right to religious autonomy as it relates to "the school's internal employment decisions." ECF 1 at ¶ 135. This first claim contends that the "Blanket Provision," Provision 18(B), "violates both the ministerial exception and coreligionist exemption" to hiring based on shared religious beliefs. ECF 1 at ¶ 139. After their disavowal of this Provision's enforcement against DPCA's employment practices for the 2023-24 school year, the Defendants have entirely removed the "Blanket Provision" from the 2024-25 Agreement. SUMF ¶ 5, 7, 11 (Ex. 1063 2024-25 Agreement). In this first claim, Plaintiff asserts no other employment-related barriers to its participation in the UPK Program. *See* ECF 1 at ¶ ¶ 132-41. With the Provision 18(B) language removed, Plaintiff's first claim is moot.

Plaintiff's second claim for relief raises concerns regarding the "Blanket Provision," Provision 18(B). ECF 1 at ¶ 144. Plaintiff alleges that this provision, as well as the Quality Assurance standard, "requir[es] the school to forfeit its religious status, beliefs, and exercise to participate in UPK" and therefore "violates the Free Exercise Clause." ECF 1 at ¶ ¶ 146-7. DPCA made no changes to its employment practices in connection with Provision 18(B), and with the removal of the language at Provision 18(B), the portion of claim two that pertains to that provision is also now moot. SUMF ¶ 10; *see* ECF 28 at 13-14.

Plaintiff's third, fifth, and sixth claims all similarly reference Provision 18(B). The third claim asserts that both the "[a]pplication of the Quality Assurance and Blanket Provisions to the School substantially burdens the school's religious exercise." ECF 1 at ¶ 151. The fifth states the "Quality Assurance and Blanket Provisions restrict and compel the school's speech" causing

16

DPCA "to forfeit its right to free speech to participate in the UPK." ECF 1 at ¶ ¶ 168-70. The sixth contends that "[b]y enforcing the Quality Assurance and Blanket Provisions against the school, the Department asks the school to surrender its religious status, character, beliefs, and exercise to participate in UPK." ECF 1 at ¶¶ 146-47. Like Plaintiff's second claim, the portions of claims three, four, and five that refer to the "Blanket Provision" or Provision 18(B) are now moot.

As for its fourth claim, Plaintiff claims that the "Blanket Provision," Provision 18(B), "unconstitutionally forces the school to expressively associate with people who do not hold the same religious views and therefore, cannot express the same message." ECF 1 at ¶ 162. This claim asserts that Provision 18(B) prohibits DPCA from "employ[ing] only like-minded believers to fulfill its educational and religious purposes and to express its religious beliefs to its students and the public." ECF 1 at ¶ 161. The entirety of the fourth claim, like the first claim, is moot.

## CONCLUSION

There is no genuine dispute as to the material facts that: (1) Provision 18(B) was not included in the 2023-24 Program Service Agreement with the intent to engage in the challenged conduct; (2) the Department has disavowed enforcement of Provision 18(B) against religious providers, such as Plaintiff, that hire co-religionists and ministerial employees in accordance with federal law; (3) the Department has not enforced Provision 18(B); (4) the Department has removed Provision 18(B) from the UPK Service Agreement altogether; (5) the Department does not intend to include the provision in any future UPK agreements; and (6) Plaintiff never

changed its employment practices or employment decisions based on concerns over Provision 18(B).

Defendants' position remains that Plaintiff has never faced a credible risk of enforcement under Provision 18(B) and thus that the Plaintiff failed to establish standing to raise claims challenging that provision at the time the Complaint was filed. The undisputed facts developed since this Court's ruling on the Plaintiff's Motion for a Preliminary Injunction further confirm the absence of a credible threat of enforcement at the time of filing, or at any other time. In the alternative, Defendants contend that all claims related to Provision 18(B) are now moot.

Thus, pursuant to Fed. R. Civ. P. 56, Dr. Lisa Roy, in her official capacity as Executive Director of the Department, and Dawn Odean, in her official capacity as Director of Colorado's Universal Preschool Program (collectively, the "Defendants"), move for partial summary judgment. In particular, Defendants seek summary judgment in their favor on Counts 1 and 4 of the Complaint in their entirety and seek summary judgment for the portions of Counts 2, 3, 5, and 6 that concern Provision 18(B) of the 2023-24 Agreement, referred to by the Plaintiff as the "Blanket Provision."

Respectfully submitted June 21, 2024.

PHILIP J. WEISER
Attorney General


*s/ Brianna S. Tancher*
VIRGINIA R. CARRENO*

Second Assistant Attorney General
JANNA K. FISCHER*
Senior Assistant Attorney General
MICHELE MULHAUSEN*
Assistant Attorney General
BRIANNA S. TANCHER*
Assistant Attorney General
J. GREGORY WHITEHAIR*
Assistant Attorney General
Colorado Attorney General's Office
1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone: (720) 508-6000
Email: virginia.carreno@coag.gov
          janna.fischer@coag.gov
          michele.mulhausen@coag.gov
          brianna.tancher@coag.gov
          greg.whitehair@coag.gov
          *Attorneys for Defendants*
          *Counsel of Record

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in

Judge Domenico's Practice Standard III(A)(1).

**<u>CERTIFICATE OF SERVICE</u>**

       I hereby certify that on June 21, 2024, I electronically filed the foregoing **DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system:

Jacob E. Reed
Philip A. Sechler
Alliance Defending Freedom
44180 Riverside Parkway
Lansdowne, VA 20176
Email: jreed@ADFlegal.org; psechler@ADFlegal.org

David A. Cortman
Ryan J. Tucker
Jeremiah Galus
Bryan Neihart
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
Email: dcortman@ADFlegal.org; rtucker@ADFlegal.org; jgalus@ADFlegal.org; bneihart@ADFlegal.org
*Attorneys for Plaintiff*

                                    /s/   Bonnie Smith