IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-01557-DDD-STV

DARREN PATTERSON CHRISTIAN
ACADEMY,

        *Plaintiff*,

   v.

LISA ROY, et al.,

        *Defendants*.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT FILED JUNE 21, 2024 (ECF NO. 77)**

# **TABLE OF CONTENTS**

Table of Authorities ................................................................................................... ii

Introduction ............................................................................................................... 1

Response to Statement of Undisputed Material Facts ............................................... 2

Argument ................................................................................................................... 4

    I.   This Court correctly held that the School had standing to challenge the Blanket Provision. ........................................................................................... 4

    II.  The Department has not met its "heavy burden" of proving the School's employment-related claims are moot. ............................................................. 5

        A.  The burden is not less stringent for government officials. .......................... 6

        B.  The Department continues to defend the legality of the Blanket Provision and would apply it to the School's hiring practices. .................... 7

        C.  The Department's removal of the provision was reluctant and its timing raises suspicions that the change is not genuine. ........................... 9

        D.  Nothing prevents the Blanket Provision from being reinstated ................ 11

Conclusion ............................................................................................................... 13

Certificate of Compliance ....................................................................................... 13

Certificate of Service ............................................................................................... 14

**TABLE OF AUTHORITIES**

**Cases**

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013) ........................................................................................................... 5, 6

*Bostock v. Clayton County*,
  590 U.S. 644 (2020) ............................................................................................................. 8

*Brown v. Buhman*,
  822 F.3d 1151 (10th Cir. 2016) ........................................................................................... 6

*Citizen Center v. Gessler*,
  770 F.3d 900 (10th Cir. 2014) ............................................................................................. 6

*City of Mesquite v. Aladdin's Castle, Inc.*,
  455 U.S. 283 (1982) ........................................................................................................... 13

*County of Los Angeles v. Davis*,
  440 U.S. 625 (1979) ............................................................................................................. 9

*FBI v. Fikre*,
  601 U.S. 234 (2024) ....................................................................................................... 6, 11

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
  528 U.S. 167 (2000) ......................................................................................................... 6, 9

*Knox v. SEIU*,
  567 U.S. 298 (2012) ....................................................................................................... 7, 12

*MacIntyre v. JP Morgan Chase Bank*,
  No. 13-cv-1647-WJM-MEH, 2014 WL 3809496 (D. Colo. Aug. 1, 2014) ................... 7

*Mink v. Suthers*,
  482 F.3d 1244 (10th Cir. 2007) ........................................................................................... 5

*Rio Grande Silvery Minnow v. Bureau of Reclamation*,
   601 F.3d 1096 (10th Cir. 2010) .............................................................................. 6, 9

*Speech First, Inc. v. Schlissel*,
   939 F.3d 756 (6th Cir. 2019) ................................................................................. 9, 12

*Tandy v. City of Wichita*,
   380 F.3d 1277 (10th Cir. 2004) ................................................................................ 7

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
   582 U.S. 449 (2017) ...................................................................................... 1, 6, 12

*United States v. Supreme Court of New Mexico*,
   839 F.3d 888 (10th Cir. 2016) .................................................................................. 4

# INTRODUCTION

To participate in the Universal Preschool Program's inaugural year, faith-based providers were required to agree with and abide by a provision that prohibited them from considering "religion," "sexual orientation," or "gender identity" in their employment decisions. Ex. 6 at 27, ECF No. 78-4 (the "Blanket Provision"). This was a problem for Darren Patterson Christian Academy (the "School") and many other religious schools that expect employees to share and live out their faith, including their beliefs about marriage and sexuality.

So the School explained its religious employment criteria to the Colorado Department of Early Childhood and asked for an exemption. Ex. 10 at 2, ECF No. 78-6. The Department said no, *id.* at 1, and later claimed a "compelling interest in eliminating discrimination in hiring," Defs.' Resp. to Mot. for Prelim. Inj. ("Defs.' MPI Resp.") 17, ECF No. 29. This Court disagreed and issued a preliminary injunction protecting the School's right to hire coreligionists. Order Denying Mot. to Dismiss and Granting Prelim. Inj. ("MPI Order") 30–31, ECF No. 53.

The Department now tries to avoid a permanent injunction by removing the Blanket Provision from next year's agreement. But this last-minute maneuver doesn't meet the "heavy burden" for mootness. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 457 n.1 (2017). The School can still face complaints and investigations for past employment decisions, and the Department can still terminate any future agreement "in its discretion" by claiming the decision is in the "public interest." Ex. 62 at 5, ECF No. 78-17. The timing of the Department's decision also calls into question whether the provision's removal is genuine and permanent. In fact, the Department confessed that nothing prevents it from reinstating the provision later. The Court should deny the Department's motion.

1

## **RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. Admitted.

2. Admitted that the Colorado legislature mandated a "mixed delivery" system. Denied that the cited material establishes that Colorado's Universal Preschool Program is "unique" among those states with similar programs.

3. Admitted that the Department was formally created July 1, 2022. Denied that the Department did not have its own procurement personnel when drafting the 2023-24 Agreement. The Department's transition director testified that "some staff members" on the "contracts and procurement team" were "housed in the new Department." Cooke Dep. 25:14-18, ECF No. 78-23 (Ex. 68). The Agreement was "an effort between" the "leadership [that] did exist at CDEC at that time" and "the governor's office," as well as "CDHS" and "the Department of Personnel Administration." CDEC-Derocher Dep. 44:14-20, ECF No. 78-20 (Ex. 65).

4. Denied. The Department's transition director testified that "we drafted the provider agreement" based on "a couple of different examples of agreements," Cooke Dep. 25:19-24, "shared that [draft] with Dr. Roy and others internally to review and comment on," *id*. at 26:10-12, shared it "with the Early Childhood policy director in the governor's office," *id*. at 26:13-14, and then sent the "finalized" version to other state agencies "for their input," *id*. at 26:21-24.

5. Denied. The purported "disavowal" in Defendant Odean's declaration was made almost two months after this lawsuit was filed (not at its "inception"), *see* ECF No. 28-1, and this Court has already held that "the disavowal falls flat" when "read in the context of this lawsuit," MPI Order 18.

6. Admitted.

7. Admitted.

8. Admitted.

9. Admitted.

10. Admitted.

11. Admitted.

12. Admitted that the 2024-25 Agreement has been distributed. Denied that it is not subject to further changes; the cited material does not support that proposition, and the Department testified that nothing prohibits it from adding the Blanket Provision (Provision 18(B)) back into the Agreement. CDEC-Derocher Dep. 58:17-21.

13. Denied. The cited material does not establish that the Department has "no intention" of adding the Blanket Provision (Provision 18(B)) back into the Program Service Agreement. The referenced trial testimony from the *St. Mary Catholic Parish* case simply notes the provision was not going to be included "in year two of the provider agreement." Odean Testimony 232:16-22 (Ex. 1068), ECF No. 77-7. In contrast, the Department testified here that nothing—no regulation, rule, or policy—prevents it from reinstating the Blanket Provision. CDEC-Derocher Dep. 57:13-19, 58:17-21.

14. Denied. The cited material does not establish that the Blanket Provision (Provision 18(B)) has never been enforced; it says only that the Department has "not enacted remedies for breach of an agreement." CDEC-Derocher 50:16-24. Moreover, the Department required all providers to affirm compliance with the 2023-24 Agreement, including the Blanket Provision, as a condition to participation. CDEC-Odean Dep. 8:17-21, ECF No. 78-21 (Ex. 66).

15. Admitted.

# ARGUMENT

## I. This Court correctly held that the School had standing to challenge the Blanket Provision.

The State contends that the School lacks standing to challenge the Blanket Provision because there "has never been a credible risk of enforcement" and the Department has "consistently disavowed the challenged conduct." Defs.' Mot. for Partial Summ. J. ("Defs.' Mot.) 8, ECF No. 77. But this Court thoroughly rejected that argument, MPI Order 9–23, and there is no reason it should not do so again.

As this Court recognized, the "threat of prosecution is generally credible where a challenged provision on its face proscribes the conduct in which a plaintiff wishes to engage." *Id*. at 11 (quoting *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 901 (10th Cir. 2016)). And here, the Blanket Provision broadly prohibits providers from "discriminat[ing] against *any person* on the basis of ... religion ... sexual orientation, [or] gender identity." Ex. 6 at 27, ECF No. 78-4 (emphasis added). The provision therefore forbids the School from preferring employees who share its faith—including its beliefs about marriage and sexuality—and from requiring its staff and students to abide by school policies on bathroom usage, dress code, and pronoun usage. *See* Pl.'s Statement of Undisputed Facts ("Pl.'s SUMF") ¶¶ 35–38, ECF No. 78.

The credible threat, this Court noted, is bolstered by the fact that any person can file a complaint and "trigger an investigation that would jeopardize [the School's] participation in the program." MPI Order 17. Finally, this Court has already determined that the State's purported "disavowal"—which says the Department will not enforce the Blanket Provision against religious employers so long as their employment practices comply with federal law—is far "too limited and unclear to revoke the court's jurisdiction." *Id*. at 17–18. That's because the

4

disavowal has "no bearing on any of [the School's] policies that affect student conduct," *id.* at 18, "depends on Defendants' interpretation of the scope of Plaintiff's constitutional rights," which the Department refused to articulate, *id.* at 21, and was made after the School sued and the Department "refus[ed] to grant [the School] an exemption," *id.* at 19.

Nothing new alters the analysis. The Blanket Provision's plain terms still prohibit the School's religious policies and practices. Pl.'s SUMF ¶¶ 35–38. The Department admitted it will investigate *any* third-party complaint brought to its attention, even anonymous ones. *Id.* ¶¶ 41–42. And the Department continues to "couch[ ]" its purported disavowal "within the confines of 'federal law.'" MPI Order 21. So the disavowal remains "too little, too late" and cannot deprive this Court of jurisdiction. *See Mink v. Suthers*, 482 F.3d 1244, 1253–54 (10th Cir. 2007) ("[S]tanding is determined at the time the action is brought, and we generally look to when the complaint was first filed, not to subsequent events." (cleaned up)).

## II. The Department has not met its "heavy burden" of proving the School's employment-related claims are moot.

With the School's standing solidified, the Department next argues that removal of the Blanket Provision from the 2024-25 Agreement moots the School's employment-related claims. Defs.' Mot. 10–12. This argument fares no better.

A defendant "cannot automatically moot" the plaintiff's claims "simply by ending its unlawful conduct once sued." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Id.* Given this concern, the Supreme Court has stated that the defendant bears "the heavy burden of making absolutely clear"

5

that the "allegedly wrongful behavior could not reasonably be expected to recur." *Trinity Lutheran*, 582 U.S. at 457 n.1 (cleaned up). The Department has not come close to meeting that "formidable burden." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

### A.   The burden is not less stringent for government officials.

To begin, the State's mootness argument rests on a faulty premise. The Department claims the "heavy burden" of proving mootness is less stringent "in the context of government enforcement." Defs.' Mot. 12–13. In its view, the government's mere "alteration or withdrawal" of the challenged policy moots the controversy so long as the change "seems genuine." *Id.* at 13 (quoting *Brown v. Buhman*, 822 F.3d 1151, 1167–68 (10th Cir. 2016)).

But that is not the law. Although the Department cites three Tenth Circuit cases to support its position,[1] the Supreme Court more recently clarified that the burden "for governmental defendants" is "no less than for private ones." *FBI v. Fikre*, 601 U.S. 234, 241 (2024). So the Department cannot simply "assum[e] the answer" to the all-important question of whether its "allegedly wrongful behavior" can "reasonably be expected to recur." *Already, LLC*, 568 U.S. at 92.

Nor is it enough to say, as the State does, that "no evidence indicates that the Department's removal [of the Blanket Provision] was reluctant or that it seeks to reinstate [the provision] at some future time." Defs.' Mot. 13. That's not only wrong (as explained below), but it gets things exactly backwards. It is not the School's burden to show the Department might revert to its previous ways. Rather, the Department *must prove* its "cessation is 'permanent in nature' and 'forecloses a

---

[1] Along with *Brown*, the State cites *Citizen Center v. Gessler*, 770 F.3d 900 (10th Cir. 2014), and *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096 (10th Cir. 2010). *See* Defs.' Mot. 12–13.

6

reasonable chance of recurrence.'" *MacIntyre v. JP Morgan Chase Bank*, No. 13-cv-1647-WJM-MEH, 2014 WL 3809496, at *3 (D. Colo. Aug. 1, 2014) (quoting *Tandy v. City of Wichita*, 380 F.3d 1277, 1291 (10th Cir. 2004)). Because it has not done so here, the Court should deny the motion.

### B. The Department continues to defend the legality of the Blanket Provision and would apply it to the School's hiring practices.

The Court should also reject the State's mootness argument because the Department "continues to defend the [Blanket Provision's] legality." *Knox v. SEIU*, 567 U.S. 298, 307 (2012). In fact, the Department maintains it always had the legal authority to include the provision, *see* Pl.'s SUMF ¶ 33, and that its inclusion advanced the government's "compelling interest in eliminating discrimination in hiring," Defs.' MPI Resp. 17.

The Department has also represented, both in this case and the *St. Mary Catholic Parish* case, that it will investigate *any* complaint alleging that a provider engaged in employment discrimination. *E.g.*, Defs.' MPI Resp. 11 ("[T]he Department would have to investigate the complaint and determine whether the Plaintiff had violated the contractual provision."); Defs.' Mot. to Dismiss 16 n.5, *St. Mary Catholic Parish*, No. 1:23-cv-02079-JLK (D. Colo. Oct. 6, 2023), ECF No. 38 ("[T]he Department will of course need facts to determine whether a provider's employment decisions regarding its co-religionist employees and ministerial employees are protected by federal law.").

Even now, when trying to convince the Court about mootness, the Department says it won't enforce the provision only against "religious providers" that "hire co-religionists and ministerial employees *in accordance with federal law*." Defs.' Mot. 17 (emphasis added). Again, the Department's commitment is

7

conditioned on the School's compliance with "federal law," making enforcement entirely "depend[ent]" on the Department's "interpretation." MPI Order 21.

This is no small thing. The State may have "refused to explain" its interpretation of federal law "in this litigation," *id.*, but it has articulated its view in the *St. Mary Catholic Parish* case. The State there expressed its position that "the co-religionist exception does not permit religious organizations to discriminate against its non-ministerial employees based on sex, race, or any other basis prohibited by federal law." Defs.' Rule 56(d) Mot. to Deny Pls.' Mot. for Summ. J. and Defs.' Resp. to Pls.' Alternative Mot. for Prelim. Inj. 27, *St. Mary Catholic Parish*, ECF No. 77. Such an interpretation has serious implications because the School requires all employees, ministerial and non-ministerial alike, to agree with and live out its religious beliefs, including those related to marriage and sexuality. *See Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020) (Title VII's prohibition of "sex" discrimination includes sexual orientation and gender identity).

To be sure, the Department has removed the Blanket Provision from the 2024-25 Agreement. But that maneuver doesn't prevent complaints from being filed and investigated for employment decisions that occurred last year, which could jeopardize the School's participation all the same.[2] Indeed, with or without the Blanket Provision, the Department can terminate a provider's agreement "in its discretion" if it determines the agreement no longer "further[s] the public interest of

---

[2] The concern over delayed (and strategically-timed enforcement) is not hypothetical. Discovery revealed that the Department sat on a discrimination complaint *for eleven months* before ever telling the provider that a complaint had been filed and was being investigated. Pl.'s SUMF ¶¶ 50–52. Importantly, that complaint alleged that the provider violated the Program's nondiscrimination rules for having a pronoun policy much like the School's here. And the Department waited to close that investigation until *after* the discovery deadline in this case— more than a year after it first received the complaint.

the State." Ex. 62 at 5, ECF No. 78-17. And the Department claims it has a compelling governmental interest in "eliminating" employment discrimination no matter when it occurs. Defs.' MPI Resp. 17. The Department cannot claim no threat to the School exists while simultaneously claiming a compelling interest in preventing employment discrimination.

In other words, "subsequent events" have not "made it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 189 (cleaned up) (emphasis added). Nor have they "completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). So the School's employment-related claims are not moot.

### C. The Department's removal of the provision was reluctant and its timing raises suspicions that the change is not genuine.

The Department also asserts that its removal of the Blanket Provision was not done reluctantly. Defs.' Mot. 13. Nonsense. The timing of the Department's change, as well as the history of this case, undeniably show the removal was "reluctant," *Rio Grande*, 601 F.3d at 1117, and "raise[ ] suspicions" that the change "is not genuine," *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 769 (6th Cir. 2019).

Indeed, there were many opportunities to avoid this conflict before now.

Start from the beginning. Despite the "Program's authorizing statute" not "requir[ing] such a provision," Defs.' Mot. 11, the Department still included the Blanket Provision in the 2023-24 Agreement. It did so knowingly and after substantial agency review and feedback. While the Department repeatedly blames a "pre-existing template" for this case and controversy, Defs.' Mot. 1, 9, 11, 13, the discovery record shows the Agreement was in fact "an effort between" the

9

Department's "leadership" and "the governor's office," as well as "CDHS" and "the Department of Personnel Administration." CDEC-Derocher Dep. 44:14-20. The Department's transition director explained that the Agreement was shared "with Dr. Roy and others internally to review and comment on," Cooke Dep. 26:10-12, ECF No. 78-23 (Ex. 68), shared "with the Early Childhood policy director in the governor's office," *id.* at 26:13-14, and then sent to other state agencies "for their input," *id.* at 26:21-24. So the Blanket Provision wasn't a mistake; it underwent extensive review. *Contra* Defs.' Mot. 11.

In any event, the Department had a chance to fix it (if it wanted to) long before this litigation began. Before suing, the School described its employment practices to the Department, explained that the Blanket Provision restricts those practices, and requested a religious exemption. Ex. 10 at 2, ECF No. 78-6. Yet the Department refused to grant an exemption. *Id.* at 1. This forced the School to sue and to seek a preliminary injunction protecting its right to hire employees who "share and live out its religious beliefs" while participating in the Program. Pl.'s Mot. for Prelim. Inj. 1, ECF No. 14. The Department could have consented to that requested relief, but it didn't. Instead, it opposed the motion and claimed a "compelling interest in eliminating discrimination in hiring." Defs.' MPI Resp. 17. Even this Court's preliminary-injunction ruling could not get the State to change its tune. The Department steadfastly refused to remove the Blanket Provision from the 2023-24 Agreement and continued to require all other providers, including religious ones, to agree with and abide by the provision to participate in the Program's inaugural year—even though the Department says it realized during the Program's "implementation" that the "provision was not necessary." Defs.' Mot. 11.

Only now, with the threat of final judgment looming, has the Department decided to remove the provision from next year's agreement. But "[a] live case or controversy cannot be so easily disguised, and a federal court's constitutional authority cannot be so readily manipulated." *Fikre*, 601 U.S. at 241. The Court should reject the State's attempt to do so.

### D. Nothing prevents the Blanket Provision from being reinstated.

Finally, the Court should deny the motion because the State can always reinstate the Blanket Provision later. Indeed, discovery showed that nothing—no regulation, rule, or policy—prevents it from doing so:

> Q: Do you have any, or does the Department have any rule or policy that would prohibit it from adding this provision back into future agreements?
>
> [Attorney Objection]
>
> A: We do not have a specific statute or rule which explicitly prohibits it, no.
>
> \* \* \* \* \*
>
> Q: Mr. Derocher, is there any internal policy that would prohibit the Department from adding this provision into the '24, '25 agreement?
>
> A: We do not have an explicit policy explicitly prohibiting it, no.

CDEC-Derocher Dep. 57:13-19, 58:17-21; *see also* Pl.'s SUMF ¶ 34.

Realizing that this severely undermines its argument, the State's motion makes a point to say the Department has finally "determined" the Blanket Provision is no longer needed "to achieve the program's objectives." Defs.' Mot. 11. But this raises more questions than it answers. For one thing, it doesn't explain how or why the Department made that determination—or why it took so incredibly

11

long. Nor does it explain why the Department continues to limit its "disavowal" to "religious providers" that "hire co-religionists and ministerial employees in accordance with federal law." *Id.* at 17. If the Blanket Provision is unnecessary, and there is no risk of reinstatement, then why won't the Department disclaim enforcement for all providers and circumstances?

The truth is that the Department can easily reinstate (and enforce) the Blanket Provision whenever it wants.[3] And that means the School's employment-related claims are not moot. For example, in *Trinity Lutheran*, the Supreme Court held that a governor's policy change allowing organizations to "compete for and receive Department grants on the same terms as secular organizations" did not moot the case because it did not make "absolutely clear" that the Department "could not revert to its policy of excluding religious organizations." 582 U.S. at 457 n.1 (cleaned up).

Same here. Like the governor's announcement in *Trinity Lutheran*, the Department's "change is merely regulatory," involving "ad hoc, discretionary, and easily reversible actions." *Speech First, Inc.*, 939 F.3d at 768. The Department's decision to leave the Blanket Provision out of the new agreement shows only what it "intends to use presently"—it "does not indicate any future intentions." *Id.* at 769. There are no clear or codified procedures that make the new agreement permanent, nor is there anything that would prevent the Department from reversing course later. So it is far from "clear" that the Department will "necessarily refrain" from reinstating the Blanket Provision "in the future." *Knox*, 567 U.S. at 307.

---

[3] The Department's assertion that it "never enforced" the Blanket Provision, Defs.' Mot. 3, completely ignores that it required providers to pledge compliance with the provision as a condition to Program participation, which predictably prevented many faith-based providers from participating.

12

Because the Department remains "free to return to [its] old ways," *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n.10 (1982) (cleaned up), the School's employment-related claims are not moot.

## CONCLUSION

For all these reasons, Plaintiff requests that the Court deny Defendants' Motion for Partial Summary Judgment.

Respectfully submitted this 26th day of July, 2024,

|  |  |
|---|---|
|  | s/ Jeremiah Galus |
| Philip A. Sechler, VA Bar #99761 | David A. Cortman, AZ Bar #029490 |
| Jacob E. Reed, VA Bar #97181 | Ryan J. Tucker, AZ Bar #034382 |
| ALLIANCE DEFENDING FREEDOM | Jeremiah Galus, AZ Bar #030469 |
| 44180 Riverside Parkway | Bryan Neihart, AZ Bar #035937 |
| Lansdowne, VA 20176 | ALLIANCE DEFENDING FREEDOM |
| Telephone: (571) 707-4655 | 15100 N. 90th Street |
| Email: psechler@adflegal.org | Scottsdale, AZ 85260 |
| jreed@adflegal.org | Telephone: (480) 444-0020 |
|  | Email: dcortman@adflegal.org |
|  | rtucker@adflegal.org |
|  | jgalus@adflegal.org |
|  | bneihart@adflegal.org |

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

13

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: July 26, 2024

s/ Jeremiah Galus
Jeremiah Galus
Attorney for Plaintiff
