IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-01557-DDD-STV

**DARREN PATTERSON CHRISTIAN ACADEMY**
     Plaintiff,
v.

**LISA ROY**, in her official capacity as Executive Director of the Colorado Department of Early Childhood; and

**DAWN ODEAN**, in her official capacity as Director of Colorado's Universal Preschool Program,
     Defendants.

_____

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE OR, IN THE ALTERNATIVE, NARROW THE USE AT TRIAL OF DR. STEPHEN LEVINE'S EXPERT DISCLOSURE [ECF 83]**
_____

Plaintiff filed its Opposition to Defendants' Motion to Strike or Narrow the Use of Dr. Levine's Expert Disclosure (ECF 83) on July 22, 2024 (ECF 87). Plaintiff's papers reinforce that Dr. Levine's May 30, 2024 disclosure is neither a proper rebuttal report, nor support for testimony at trial that would assist this Court. And despite Dr. Levine making key concessions in his deposition supporting Defendants' case, Defendants should not be compelled to address voluminous new matter from his late-delivered report, which goes far beyond the issues in this case. Dr. Levine's report should be stricken, or at least limited to its few pages addressing the timely-proffered opinions of Defendants' expert, Dr. Tishelman.[1]

---

[1] Defendants are today filing a Reply to Plaintiff's Opposition (ECF 88) in support of Defendants' contested Motion to Amend (ECF 84) the Scheduling Order (ECF 61, 70, 74) raising the unfairness if Plaintiff is allowed to submit out-of-time expert disclosures tantamount to an affirmative expert report. As a reasonable accommodation should the Court deny this

1

Dr. Levine's report discusses *his* views on appropriate health care responses to people who identify as gender-diverse and/or transgender before age 18, who he refers to generally as "minors." But this Court is not being asked to rule on the appropriate medical or psychological treatment for a hypothetical transgender or gender-diverse preschooler at Darren Patterson Christian Academy ("DPCA"). Indeed, both sides' retained experts agree that the family is best positioned to decide what is best for their preschooler, ideally with the help of their health care providers – *i.e.*, a school that interferes with that family's choice about how to support their transgender or gender-diverse child causes harm to that child. Levine Dep. Tr. 299:21-300:25 (Ex. 78).

Put plainly, the issue before the Court is assessing Colorado's interest in protecting preschoolers, in publicly funded preschools, from discrimination that interferes with their ability to learn and grow in a safe and healthy environment. With all due respect to Dr. Levine's long medical career, his report does not assist the Court with that issue, as it does not rebut the core subject matter addressed in Dr. Tishelman's report. Additionally, Dr. Levine's report reflects his lack of experience with, or research on, gender-diverse or transgender preschoolers and relies heavily on a discredited source.

## ARGUMENT

### I.   Dr. Levine's report is not a proper rebuttal report.

"Rebuttal experts are those 'intended solely to contradict or rebut evidence on the same subject matter identified' by affirmative experts." *Vyanet Operating Grp., Inc. v. Maurice*, 2023

---

*Motion to Strike*, Defendants in their *Motion to Amend* seek the relief of a "reply" expert report from Dr. Tishelman that serves the purpose of a "rebuttal" report, had Plaintiff complied with the scheduling order.

WL 1860237, at *1 (D. Colo. Feb. 9, 2023) (citing F.R.C.P. 26(a)(2)(D)(ii)). "Rebuttal experts cannot 'put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts.'" *Id*. (citing *Spring Creek Expl. & Prod. Co., LLC, v. Hess Bakken Inv. II, LLC*, 2016 WL 1597529, at *3 (D. Colo. April 21, 2016)). "Individuals designated only as rebuttal experts may present limited testimony, may not testify as part of a party's case-in-chief, and cannot testify 'unless and until' the testimony they were designated to rebut is given at trial." *Id*. (citing *Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 636 (D. Haw. 2008)).

Whether Dr. Levine should be allowed to testify in rebuttal at trial[2] hinges, factually and legally, on the scope of the expert disclosures submitted by Defendants in Dr. Tishelman's opening report. These topics, paraphrasing the *Motion to Strike* (ECF 83 p.3), are:

(1) applying Dr. Tishelman's hands-on clinical experience with preschoolers and other young children's gender identity issues as well as her extensive personal research involving young children;

(2) how early adversities (ACES), such as schools' gender identity discrimination against children, are shown to have detrimental impacts over the child's lifetime;

(3) that gender-diverse and transgender preschool-age children constitute a particularly vulnerable population meriting protection;[3] and

---

[2] Plaintiff chose not to tender an affirmative report by the deadline and thus cannot object to calling Dr. Levine only after Defendants have completed their defense case, and not to support in any way Plaintiff's case-in-chief.

[3] Dr. Levine agrees. *See* Levine Dep. Tr. 74:25-75:5; 241:5-23.

3

(4) that schools that reject a child's gender identity, in conflict with the family's welcoming environment, can create a confusing and harmful learning environment undermining that child's mental health and school success.[4]

Because Plaintiff failed to submit an opening expert disclosure, opinions offered by Dr. Levine in rebuttal must fit within the subject matter addressed by Dr. Tishelman's report. To be admissible, Dr. Levine's rebuttal must thus be directed to (1) comparable hands-on clinical experience with preschoolers; and/or (2) a scientifically reliable basis for contradicting Dr. Tishelman's observations of negative impacts on children; and/or (3) reliable proof that gender-diverse and transgender preschoolers are not a vulnerable cohort, worthy of protection from discrimination in publicly-funded schools; and/or (4) evidence of how a conflict between a family's acceptance of their child's gender identity versus the school's contrary treatment is not harmful to the child.

Nowhere does Dr. Levine tackle any of *these* subjects.

Plaintiff nevertheless seeks this Court's agreement that Dr. Levine's report is simply "rebuttal" material because it (in fewer than five pages) references Dr. Tishelman's opinions "promoting" an "affirmative" response to young people's gender identity. *See* Levine Report, pp. 4-6, 90-91 (Ex. 76, ECF 78-31). But, as discussed in Defendants' *Motion to Strike*, Dr. Levine could not even identify where in Dr. Tishelman's report she advocated for this "affirmative response," admitting that he was "inferring" that argument by Dr. Tishelman. *See* Levine Dep. Tr. 216:12-16 ("I think you have a point that I'm inferring.").

---

[4] Dr. Levine agrees again: a teacher challenging a child's gender identity "interferes" with that child's ability to listen and feel safe, sometimes rising to a "hostile" event. Levine Dep. Tr. 299:21-300:25.

Notably, significant portions of Dr. Levine's report are not directed to anything in this case, having been recycled from reports he submitted in other cases, involving much older children and adults. *See* Levine Dep. Tr. 9:16-10:8. Dr. Levine conceded at deposition that his report introduced new subject matter material rather than rebutting Dr. Tishelman's report. *See* Levine Dep. Tr. 50:25-51:4 (stating he did not think of his report as a rebuttal but rather, as offering his own opinion). Plaintiff's *Opposition* minimizes this important admission as "merely reflecting his unfamiliarity with legal procedure," ECF 87 at n.7, but his background and extensive experience as a retained expert indicate otherwise.

Dr. Tishelman's report is about the health and safety of preschoolers. Dr. Levine does not rebut Dr. Tishelman's expert opinions regarding how certain environments can be harmful to preschoolers. In fact, Dr. Levine admitted that this case's subject matter was not puberty-blockers, cross-hormone therapy, or other medical interventions that all parties agree are inappropriate for preschoolers. Levine Dep. Tr. 53:10-24. In addition, Dr. Levine's report does not contradict Dr. Tishelman's opinions regarding how adverse childhood experiences—that include schools' discrimination against children based on gender identity—can be harmful to the child. In fact, at the end of his deposition Dr. Levine *agreed* that a teacher creates a harmful and hostile environment for a child if they challenge that child's gender identity. *See* Levine Dep. Tr. 299:21-300:25.

## II.     Dr. Levine's report will not assist the trier of fact.

This case is not about the lifelong implications of socially transitioning preschoolers. This case is about whether schools are free to discriminate against preschoolers who are gender diverse and made the decision to socially transition. Because Dr. Levine's report contains so

5

much new material not directed to the issues at hand, responding to that report will require Defendants to spend taxpayer dollars preparing to rebut numerous topics outside the scope of Dr. Tishelman's report that will confuse the issues and the record. Plaintiff injects new issues into the case, for example, when it argues the trial should be about the pros and cons of choosing between what it calls the "affirmative" approach versus "watchful waiting." ECF 87 at 2-3. But this case instead concerns a school's actions *after* a family has already made the decision of what is best for their child. Dr. Tishelman's disclosures did not render any opinion about what a family should do when they have a gender-diverse child, explaining instead that the family is best-positioned to decide how to support their child and that a school causes harm when it provides an environment in conflict with a family's decision. *See* Tishelman Report (Ex. 37) pp. 7-15.

Similarly, Dr. Levine fails to address Dr. Tishelman's disclosure on the subject matter of adverse childhood experiences (ACES) that include schools' discriminatory treatment of children based on gender identity. *See* Tishelman Report (Ex. 37) pp. 6-7. Dr. Tishelman relies on her clinical experiences involving young children along with citations to widely accepted, peer-reviewed evidence of ACES, and explains the long-term harms inflicted upon gender diverse/transgender preschoolers when a school's policies interfere with a family's decision about how to best support and accept their child's gender identity. *Id.*

Plaintiff makes much of the idea that Dr. Levine is providing the Court a broader picture of various "modalities of treatment" for gender-diverse and transgender individuals. But if Plaintiff believed it was essential for the Court to have a background in gender dysphoria and potential outcomes of various treatment modalities long after preschool, Plaintiff should have

6

submitted an affirmative expert report. Plaintiff failed to do so. Regardless, these issues are irrelevant to this case and will not assist the Court with the issues the Court needs to decide.

### III. Dr. Levine is unqualified to offer expert opinions regarding preschool-aged children and Dr. Levine's opinions regarding such children are unreliable.

Plaintiff's *Opposition* describes Dr. Levine's expertise as involving "minors" and "children", yet focuses on adults or adolescents. The articles that Plaintiff relies on to try to establish that Dr. Levine has experience treating young children with gender dysphoria (ECF 87 at 3-4) are not empirical research articles (i.e. articles that report the results of a study that uses data derived from actual observation or experimentation).

Defendants do not seek to denigrate Dr. Levine in his true field(s) of expertise; but that expertise does not extend to preschool-aged children, or how preschools should treat those children, regarding gender identity issues. Indeed, Dr. Levine has not had a preschooler as a client that he can recall in the last decade and has worked with a child under the age of 12 only once in that time, and then only as part of an 8-person observation panel at a conference. *See* Levine Dep. Tr. 23:20-25:13; 26:21-23 (admitting he was not the direct treating physician). There is no showing that he has worked on advising schools on how to work with gender-diverse or transgender children.

Additionally, Dr. Levine has not been qualified as an expert before to testify about young children with gender dysphoria. None of the cases Plaintiff highlighted in the *Opposition* are cases where Dr. Levine was retained as an expert in diagnosing, understanding, or treating young children with gender dysphoria. Plaintiff cites to *T.F. v. Kettle Moraine Sch. Dist.*, 2023 WL 6544917 (Wis. Cir. Ct. Oct. 3, 2023), but the child in that case was in middle school. Interestingly, that court found that the school district could not supplant the family's medical

7

decisions for their child and relied on Dr. Levine's opinion "that living a 'double life' where a child's gender roles are different at home and school, is 'inherently psychologically unhealthy' and can undermine existing support structures for that child." *Id*. at *5, 10.

Plaintiff then stretches to claim that Dr. Levine's opinions are "highly reliable," even though Dr. Levine relies on a key discredited article. As outlined in Defendants' *Motion to Strike*, Dr. Levine's reliance on the Littman article is problematic for multiple reasons, including the author's recruitment of parental subjects from anti-trans websites and internet forums. *See* Florence Ashley, *A Critical Commentary on 'Rapid-Onset Gender Dysphoria*,' 68 Soc. Rev. 779, 780–81 (2020). Predictably, the responses received were overwhelmingly negative toward the transgender community and the study was seriously criticized in the academic community for its selection bias, methodology issues, and ethical concerns, and was refuted by clinical data.[5] The correction itself states that questions were raised and a team of editorial staff, two academic editors, a statistic review, and external reviewer found issues with the article—not that the correction was issued simply because "activist groups" labeled it "anti-trans." The depth and volume of these criticisms led to the Littman article's republication with extensive corrections and an apology.[6] Plaintiff tried to minimize the significance of the correction, but the "results"

---

[5] *See, e.g.*, Angelo Brandelli Costa, Formal Comment On: Parent Reports of Adolescents and Young Adults Perceived to Show Signs of a Rapid Onset of Gender Dysphoria, 14 PLoS One 1, 2 (2019); Arjee Javellana Restar, Methodological Critique of Littman's (2018) Parental-Respondents Accounts of "Rapid-Onset Gender Dysphoria," 49 Arch. Sexual Behav. 61, 62–63 (2020); Greta R. Bauer et al., Do Clinical Data from Transgender Adolescents Support the Phenomenon of "Rapid Onset Gender Dysphoria"?, J. Pediatrics 1, 2 (in press 2021) (finding "no support within a clinical population for a new etiological phenomenon of rapid onset gender dysphoria").

[6] Littman L (2019) Correction: Parent reports of adolescents and young adults perceived to show signs of a rapid onset of gender dysphoria. PLoS ONE 14(3): e0214157.

section was the only section *not* changed in the correction because it is a description of the observation findings and contains no analysis or conclusion. And Littman had to update her methodology section to acknowledge her conclusions were based on her biased sample selection.

Compounding the problem, when confronted at his deposition with the fact that the Littman article had been republished with extensive corrections, Dr. Levine admitted that he never read the corrected version and does not know if it made significant changes to the findings reported in the original version upon which he relied. *See* Levine Dep. Tr. 180:14-181:15; 182:3-183:19; 188:12-189:10. Dr. Levine's failure to know about the Littman correction when relying on the article, in addition to the other arguments in the *Motion to Strike*, undermines the reliability of his opinions.

This is not a lawsuit seeking judicial guidance on whether a minor should be given puberty blockers, or even whether a preschooler's gender identity should be affirmed by their family. Rather, the key issue, properly framed by Defendants, is assessing the State's interest in protecting preschoolers enrolled in UPK-funded programs from the harm that arises when a school, through its discriminatory treatment, creates conflict with a family's choice of how to support their transgender or gender-diverse child. Dr. Levine agrees with Defendants on these issues. Because Dr. Levine does not "rebut" the core of Dr. Tishelman's subject matter, his disclosures also fail the rebuttal test. The additional flaws noted simply add to the fairness of either excluding Dr. Levine altogether or narrowing his report dramatically.

---

https://doi.org/10.1371/journal.pone.0214157, presented at Dr. Levine's deposition; *see* Exhibit 78.

WHEREFORE, Defendants move to exclude all of Dr. Levine's expert "rebuttal" as late, unsupported, and inadmissible under *Daubert* and the Federal Rules of Evidence. Alternatively, Defendants seek to exclude all of Dr. Levine's expert opinions that do not directly contradict the timely disclosed opinions of Defendants' expert, Dr. Amy Tishelman, and to limit any such testimony solely to Plaintiff's rebuttal case at trial.

Respectfully submitted August 5, 2024.

PHILIP J. WEISER
Attorney General

*s/ J. Gregory Whitehair*
VIRGINIA R. CARRENO*
Second Assistant Attorney General
JANNA K. FISCHER*
Senior Assistant Attorney General
MICHELE MULHAUSEN*
Assistant Attorney General
BRIANNA S. TANCHER*
Assistant Attorney General
J. GREGORY WHITEHAIR*
Senior Assistant Attorney General
Colorado Attorney General's Office
1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone: (720) 508-6000
Email: virginia.carreno@coag.gov
janna.fischer@coag.gov
michele.mulhausen@coag.gov
brianna.tancher@coag.gov
greg.whitehair@coag.gov
*Attorneys for Defendants*
*Counsel of Record

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

## CERTIFICATE OF SERVICE

  I hereby certify that on August 5, 2024, I electronically filed the foregoing **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE OR, IN THE ALTERNATIVE, NARROW THE USE AT TRIAL OF DR. STEPHEN LEVINE'S EXPERT DISCLOSURE [ECF 83]** with the Clerk of Court using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system:

Jacob E. Reed
Philip A. Sechler
Alliance Defending Freedom
44180 Riverside Parkway
Lansdowne, VA 20176
Email: jreed@ADFlegal.org; psechler@ADFlegal.org

David A. Cortman
Ryan J. Tucker
Jeremiah Galus
Bryan Neihart
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
Email: dcortman@ADFlegal.org; rtucker@ADFlegal.org; jgalus@ADFlegal.org; bneihart@ADFlegal.org
*Attorneys for Plaintiff*

              /s/   Bonnie Smith