# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-01557-DDD-STV

DARREN PATTERSON CHRISTIAN
ACADEMY,

        *Plaintiff*,

   v.

LISA ROY, et al.,

        *Defendants*.

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Table of Authorities ................................................................................................. ii

Introduction ............................................................................................................ 1

Reply Concerning Undisputed Facts ..................................................................... 1

Response to Defendants' Statement of Additional Undisputed Facts .................. 2

Response Concerning Disputed Facts ................................................................... 3

Argument ................................................................................................................ 5

    I.   The School's employment-related claims are not moot. ................................ 5

    II.  The nondiscrimination rules violate the Free Exercise Clause. ..................... 5

        A.  The rules are not neutral or generally applicable. ..................................... 5

            1.  General Applicability. .............................................................................. 5

            2.  Neutrality. ................................................................................................ 7

        B.  The rules condition a public benefit on the School giving up its religious exercise. ................................................................................ 8

    III. The nondiscrimination rules compel and restrict speech in violation of the Free Speech Clause. ................................................................................ 9

    IV. The nondiscrimination rules fail strict scrutiny. ........................................... 10

Conclusion ............................................................................................................. 11

Certificate of Compliance ...................................................................................... 11

Certificate of Service .............................................................................................. 12

# **TABLE OF AUTHORITIES**

## **Cases**

*303 Creative LLC v. Elenis,*
  600 U.S. 570 (2023) ................................................................................................. 9

*Carson v. Makin,*
  596 U.S. 767 (2022) ....................................................................................... 8, 9, 10

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,*
  508 U.S. 520 (1993) ............................................................................................ 7, 8

*City of Boerne v. Flores,*
  521 U.S. 507 (1997) ............................................................................................. 10

*Does 1-11 v. Board of Regents of University of Colorado,*
  100 F.4th 1251 (10th Cir. 2024) ............................................................................. 6

*Espinoza v. Montana Department of Revenue,*
  591 U.S. 464 (2020) ............................................................................................... 8

*Fellowship of Christian Athletes v. San Jose Unified School District Board*
  *of Education,*
  82 F.4th 664 (9th Cir. 2023) ............................................................................... 6, 7

*Fulton v. City of Philadelphia*
  593 U.S. 522 (2021) ..................................................................................... 6, 7, 10

*Green v. Miss United States of America, LLC,*
  52 F.4th 773 (9th Cir. 2022) ................................................................................. 10

*Meriwether v. Hartop,*
  992 F.3d 492 (6th Cir. 2021) ................................................................................ 10

*St. Mary Catholic Parish v. Roy,*
  No. 23-cv-02079-JLK, 2024 WL 3160324 (D. Colo. June 4, 2024) ........................ 5

*Tandon v. Newsom,*
  593 U.S. 61 (2021) ............................................................................................... 10

*Trinity Lutheran Church of Columbia, Inc. v. Comer,*
  582 U.S. 449 (2017) ............................................................................................... 8

## **Statutes**

C.R.S. § 26.5-4-205 ................................................................................................... 6, 7

## INTRODUCTION

The Department does not genuinely dispute that there are many exceptions to the nondiscrimination rules, nor can it avoid strict scrutiny by relabeling them "preferences." Defs.' Resp. ("Resp.") 16, ECF 90. The Constitution is concerned with substance, not labels, and the record reveals the rules are not neutral or generally applicable. It also shows that they condition a government benefit on the School giving up its religious character and exercise, compel and restrict speech, and interfere with the School's religious employment practices. All of this triggers strict scrutiny, which the Department cannot satisfy. The Court should grant the School's motion.

## REPLY CONCERNING UNDISPUTED FACTS

26.     The statute does not specify which standards relate to health and safety. The Department decides "[w]hether a quality standard relates to health and safety." CDEC-Odean Dep. 40:23-41:04, ECF 78-21 (Ex. 66).

42.     The Department can initiate investigations without a complaint. CDEC-Derocher Dep. 36:20-22, ECF 78-20 (Ex. 65) (Q: "Can the Department initiate an investigation on its own?" A: "Yes.").

47.     The Department testified that "public interest" refers to "health and safety." CDEC-Derocher Dep. 48:03-05 (Q: "So public interest refers to health and safety?" A: "Generally, yes.").

58.     The Department identifies no evidence showing the School fails to provide a "safe and welcoming" environment, and the Department's expert formed no opinion on the topic. Tishelman Dep. 11:10-24, ECF 87-3 (Ex. 80).

64.     The deposition testimony cited in response refers to a subsequently proposed regulation, not the Fact Sheet. CDEC-Derocher Dep. 23:01-16.

## RESPONSE TO DEFENDANTS' STATEMENT OF ADDITIONAL UNDISPUTED FACTS

1. Denied. Busy Bees' handbook incorporates the other handbook, DPCA Dep. 179:07-15, ECF 78-27 (Ex. 72), and the School's "policy is that students need to dress according to their sex at birth," *id.* 177:09-22.

2. Denied. The handbook states that students must "[d]ress appropriately" and that "[c]lothing must be worn in an appropriate manner." Ex. 1030 at 10, ECF 90-3. This includes dressing consistently with one's "biological sex." DPCA Dep. 187:25-188:10.

3. Denied. The School considers haircuts, jewelry, nail polish, and makeup in context—i.e., whether such "dress was intending to communicate that that child was different than the sex they were born with." DPCA Dep. 186:11-17; Lubbers Dep. 94:14-95:19, ECF 78-28 (Ex. 73).

4. Denied. The School's pronoun policy flows from its religious beliefs about sexuality, which are in writing. *E.g.*, Ex. 5 at 16, ECF 78-3 ("[G]ender is biologically determined before birth."); Ex. 1030 at 19 ("DPCA adheres to a Biblical definition of gender (Genesis 1:27).")

5. Admitted the renovated preschool building will have single-stall bathrooms. However, preschoolers will continue to use the main building's sex-separated bathrooms while there for various activities. DPCA Dep. 247:02-18.

6. Admitted.

7. Denied. Mr. Drexler "admonished" his son for using the staff bathroom. DPCA Dep. 128:01-03.

8. Admitted.

2

9. Denied. Agreeing to comply with the nondiscrimination rules was made a condition to participation. CDEC-Odean Dep. 8:17-21. Admitted payments have been made as required by the preliminary injunction.

10. Admitted.

11. Denied. "Most" families who "choose Darren Patterson Christian Academy for their child do so because of the Christian education that it provides." Drexler Decl. ¶ 8, ECF 78-7 (Ex. 12); Lubbers Dep. 22:16-23:15.

12. Admitted.

13. Admitted, though more students have since enrolled.

14. Admitted.

15. Admitted.

16. Admitted.

17. Denied. The cited material shows only that the Department refused exemptions to faith-based providers that specifically requested them. The Department allows many other exceptions. Pl.'s SUMF ¶¶ 69-83.

## RESPONSE CONCERNING DISPUTED FACTS

1. Denied this is a genuine dispute of fact. The State's expert formed no opinion about whether the School's beliefs and practices create an unsafe or unhealthy environment. Tishelman Dep. 11:10-24.

2. Denied this is a genuine dispute of fact. Whether parents can force private religious schools to violate their beliefs to conform to the parents' "best judgment" is a legal question. *See also* Levine Dep. 274:17-275:24, ECF 87-1 (Ex. 78) (parents should not expect religious schools to "change their religiously informed concepts").

3

3. Denied this is a genuine dispute of fact. The cited material does not establish the School's policies interfere with any child's learning ability, and Dr. Levine testified that the School's policies facilitate helpful alternatives. Levine Rep. ¶ 244, ECF 78-31 (Ex. 76).

4. Denied this is a genuine dispute of fact. The Head of School (and 30(b)(6) representative) testified that the School would not use names for all students to avoid using pronouns. DPCA Dep. 227:14-228:22.

5. Denied this is a genuine dispute of fact. Many exceptions exist. Pl.'s SUMF ¶¶ 69-83. Whether they undermine general applicability is a legal question.

6. Denied this is a genuine dispute of fact. The School agrees families consider several factors, DPCA Dep. 34:01-25, though the primary reason families choose the School is its "Christian education," Drexler Decl. ¶ 8.

7. Denied this is a genuine dispute of fact. The cited material does not establish that the School "exclude[s]" anyone "because of LGBTQ+ status." The School welcomes everyone, including non-Christians and those who identify as LGBTQ. Drexler Decl. ¶ 6; DPCA Dep. 70:15-71:08, 72:04-73:11, 96:18-25; Lubbers Dep. 58:15-24.

8. Denied this is a genuine dispute of fact. The cited material does not establish that the working group met "to ensure faith-based providers' inclusion." The Department told the group that providers must "adhere to [the nondiscrimination] provision[]" even if that meant "they would not be able to participate in the program." Cooke Dep. 36:02-21, ECF 78-23 (Ex. 68).

9. Denied this is a genuine dispute of fact. Many exceptions exist, Pl.'s SUMF ¶¶ 69-83. Whether they undermine general applicability is a legal question.

## ARGUMENT

### I. The School's employment-related claims are not moot.

Rather than contest the merits of the School's employment-related claims, the Department argues they are "nonjusticiable." Resp. 15. But this Court held the School had standing, and the Department has not carried its "heavy burden" of proving mootness. *See* Pl.'s Resp. to Defs.' MSJ 5–13, ECF 89. Summary judgment is warranted for those claims.

### II. The nondiscrimination rules violate the Free Exercise Clause.

#### A. The rules are not neutral or generally applicable.

##### 1. General Applicability.

The Department tries to avoid the many exceptions by describing them as "preferences" that allow "departures" from the student-matching "algorithm." Resp. 16. Nonsense. The Department can't avoid strict scrutiny with wordplay.

The congregation exception shows why. The Department insists the exception doesn't "permit discrimination." Resp. 19. But it allows *faith-based* providers to reserve *all* their seats for "members of their congregation," Pl.'s SUMF ¶ 74, and they can define their congregations in secular or religious terms with no oversight from the Department. Resp. 19 ("'[C]ongregations' need not be understood in religious terms."); CDEC-Odean Dep. 68:12-13 ("We don't tell faith-based providers how to define their community."). In other words, the exception can serve as an end run around the nondiscrimination rules. *See* MPI Order 33 (recognizing this point); *St. Mary Catholic Parish v. Roy*, No. 23-cv-02079-JLK, 2024 WL 3160324, at *32 (D. Colo. June 4, 2024) (rejecting argument that exception does not permit discrimination). It also proves there is "a mechanism for individualized exemptions," because

the Department otherwise couldn't have created it. *Fulton v. City of Phila.*, 593 U.S. 522, 533 (2021); Pl.'s SUMF ¶¶ 69-70 (exceptions created before any rulemaking).[1]

Same for the employee exception. The Department does not deny providers could use that exception to enroll only children of employees who share their beliefs—including those related to marriage and sexuality. And while it claims no evidence shows the exception is being used "in a discriminatory manner," Resp. 18, the Department now says it will not regulate employment practices. But it cannot have it both ways. Either the Department interferes with employment decisions, or it allows providers to hire according to their faith and use the exception in a way that "undermines the government's asserted interests." *Fulton*, 593 U.S. at 534.

The Department also concedes existing exceptions allow providers to determine enrollment based on family income and receipt of public financial assistance. Resp. 18. Such discrimination violates the Equal Opportunity Provision. C.R.S. § 26.5-4-205(2)(b) ("income level"). And it does not matter that other UPK statutes reference Head Start providers. If the legislature authorized discrimination *in favor* of low-income families, as the Department suggests, then that just further proves the rules are generally applicable. "[G]ood intentions do not change the fact that [the State] is treating comparable secular activity more favorably than religious exercise." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.* ("*FCA*"), 82 F.4th 664, 688 (9th Cir. 2023) (en banc).

The other exceptions cannot be brushed aside either.

---

[1] That the exception helps some religious providers doesn't excuse the Department's actions. *Contra* Resp. 19-20. The Department "may not grant exemptions for some religions, but not others, because of differences in their religious doctrines." *Does 1-11 v. Bd. of Regents of Univ. of Colo.*, 100 F.4th 1251, 1257 (10th Cir. 2024).

For instance, the Department claims "nothing in the record" shows providers can discriminate based on disability. Resp. 17. But the Department admitted providers would not have to enroll a student with a disability it could not accommodate. CDEC-Odean Dep. 65:02-66:19. While that may be "common sense," it undermines general applicability all the same. *FCA*, 82 F.4th at 688.

The Department also has no good answers for refusing the School's requested exemption while: (1) allowing secular providers to grant preferences based on the child or family "being a part of a specific community," "having specific competencies or interests," or "participating in a specific activity," Ex. 20 § 4.110(A)(10), ECF 78-12; and (2) retaining the power to temporarily waive quality standards when "necessary to ensure the availability of a mixed delivery system," C.R.S. § 26.5-4-205(1)(b)(II).[2] Because each of these "mechanism[s]" for exemptions "invite the government to consider the particular reasons for a person's conduct," the rules are not generally applicable for this reason too. *Fulton*, 593 U.S. at 533.

### 2. Neutrality.

The record also "demonstrates that the [Department] has transgressed th[e] neutrality standard." *Id.*

First, it found creative ways—and novel statutory interpretations—to justify exceptions for secular reasons while refusing any for the School's policies. This "single[s] out" the School's "religious practice" for "discriminatory treatment." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 537-38 (1993).

---

[2] The assertion that the Equal Opportunity Provision relates to "health and safety," and cannot be waived, is unsupported. The Department cites a single self-serving statement, *see* RSUMF ¶ 25; *St. Mary* Tr. 210:10-12, ECF 90-11 (Ex. 1080), and can point to no statute, regulation, or policy specifying which quality standards relate to "health and safety."

Second, the Department admits the Equal Opportunity Provision was added to the 2023-24 Agreement without rulemaking, contrary to C.R.S. § 26.5-4-205(1)(a) ("shall establish by rule"), and that the Blanket Provision was not needed "to achieve the program's objectives." Defs.' MSJ 11. Yet it demanded compliance with both provisions, even after faith-based providers raised concerns. Such "gratuitous restrictions" did not "effectuate the stated governmental interests" but "suppress[ed] the conduct because of its religious motivation." *Lukumi*, 508 U.S. at 538.

Third, the Department cannot avoid accountability for singling out religious preschools in its "Fact Sheet" by blaming unnamed "employees' early misunderstandings." Resp. 21. Defendant Odean knew by December 2022 that the Fact Sheet's stated restriction on religious programming was a serious impediment for faith-based providers. Ex. 64 at 1, ECF 78-19 (making her "aware of the concerns" and seeking "guidance on instructional hours/religious instruction"). Yet she nor anyone else did anything about it, leading officials to double down on the restriction as late as November 2023. Pl.'s SUMF ¶¶ 64-68.

### B. The rules condition a public benefit on the School giving up its religious exercise.

The Department cannot evade the *Trinity Lutheran* trilogy by claiming those cases only prohibit "categorical exclusion[s]" of religious schools. Resp. 22. Rather, they broadly hold that "a State violates the Free Exercise Clause when it excludes religious observers from otherwise available public benefits" because of their "religious character," "religious activity," or "religious exercise." *Carson v. Makin*, 596 U.S. 767, 778-81 (2022) (citing *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 462 (2017); *Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464, 475-76 (2020)).

8

It is no defense that *some* faith-based providers may participate while others with disfavored religious practices are excluded. *Contra* Resp. 22. In *Carson*, the Supreme Court rejected the same argument made by the State of Maine that its funding condition was constitutional because it didn't exclude all religious applicants, but only those engaged in prohibited religious activity. 596 U.S. at 786-87. The Department recycles that argument, but "the prohibition on status-based discrimination under the Free Exercise Clause is not a permission to engage in use-based discrimination." *Id*. at 788.

### III. The nondiscrimination rules compel and restrict speech in violation of the Free Speech Clause.

The Department also argues that the rules regulate "conduct," not "protected expression." Resp. 26. That's wrong too. As this Court recognized, the rules prohibit gender-identity discrimination, and the Department interprets that requirement to mandate the use of "preferred pronouns." MPI Order 35. But "the government may not compel a person to speak its own preferred messages" about gender identity. *303 Creative LLC v. Elenis*, 600 U.S. 570, 586 (2023)

The Department doesn't really dispute this. It claims the School hasn't "establish[ed]" the rules "compel[] ... certain pronouns," Resp. 27, but then suggests the School should "refer to all children by their names" to "obviate pronoun use while treating children equally." *Id*. Regardless, discovery revealed the Department investigated a provider for saying it uses pronouns based on biological sex, not gender identity. And the Department admitted it investigated because the complaint alleged a violation of the nondiscrimination rules. Pl.'s SUMF ¶¶ 50–51.

Because the rules would "require [the School] and its staff to use a student's or employee's preferred pronouns as a condition of participating in the [P]rogram,"

9

they also violate the Free Speech Clause. MPI Order 35-36 (relying on *Meriwether v. Hartop*, 992 F.3d 492 (6th Cir. 2021), and *Green v. Miss United States of Am., LLC*, 52 F.4th 773 (9th Cir. 2022)).

## IV. The nondiscrimination rules fail strict scrutiny.

Strict scrutiny applies, so the Department must *prove* its actions "advance interests of the highest order" and are "narrowly tailored in pursuit of those interests." *Carson*, 596 U.S. at 780. The School's motion explains why the Department cannot withstand "the most demanding test known to constitutional law," *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997), but two points are worth reiterating.

First, when (as here) there is a "system of exceptions," the government cannot claim "its non-discrimination policies can brook no departures." *Fulton*, 593 U.S. at 542. Realizing this, the Department argues that an exception from one component of the rules should not undermine the rest. Resp. 20. But "whether two activities are comparable … must be judged against the asserted government interest that justifies the regulation." *Tandon v. Newsom*, 593 U.S. 61, 62 (2021). And here, the asserted interest is the same across the board. *See* Resp. 23; CDEC-Odean Dep. 15:05-12 (each protected characteristic equally important).

Second, the Department asserts an interest in ensuring children have an "equal opportunity to enroll in" and "receive … preschool services that best meet their needs, free from discrimination on statutorily-identified bases, so that they can learn and grow in a safe and healthy environment." Resp. 23. But the Department cannot rely on a "broadly formulated" interest in "equal treatment" or in "enforcing its non-discrimination policies generally." *Fulton*, 593 U.S. at 541. It must instead establish a compelling interest "in denying an exception" to the School. *Id*. And no evidence suggests—let alone proves—the School fails to provide

10

students with "a safe and healthy environment." *See* Tishelman Dep. 11:10-24 (no opinion). To the contrary, the School welcomes families of all faiths and backgrounds, DPCA Dep. 70:15-71:08, desires every student to "experience God's love at the school," Lubbers Dep. 63:20-21, and teaches students that "the way [they] were created is a beautiful thing," DPCA Dep. 184:13-185:06.

## CONCLUSION

For all these reasons, the Court should grant the School's Motion for Summary Judgment and issue a permanent injunction.

Respectfully submitted this 9th day of August, 2024,

|  |  |
|---|---|
| | s/ Jeremiah Galus |
| Philip A. Sechler, VA Bar #99761 | David A. Cortman, AZ Bar #029490 |
| Jacob E. Reed, VA Bar #97181 | Ryan J. Tucker, AZ Bar #034382 |
| ALLIANCE DEFENDING FREEDOM | Jeremiah Galus, AZ Bar #030469 |
| 44180 Riverside Parkway | Bryan Neihart, AZ Bar #035937 |
| Lansdowne, VA 20176 | ALLIANCE DEFENDING FREEDOM |
| Telephone: (571) 707-4655 | 15100 N. 90th Street |
| Email: psechler@adflegal.org | Scottsdale, AZ 85260 |
| jreed@adflegal.org | Telephone: (480) 444-0020 |
| | Email: dcortman@adflegal.org |
| | rtucker@adflegal.org |
| | jgalus@adflegal.org |
| | bneihart@adflegal.org |

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated:  August 9, 2024

s/ Jeremiah Galus
Jeremiah Galus
Attorney for Plaintiff
