



| Rule Author/Division Director: Dawn Odean | Email(s): Dawn.odean@state.co.us |
|---|---|
| Program/Division: Colorado Universal Preschool Program (UPK) | CDEC Tracking No.: 2024-09-008 |
| CCR Number(s): 8 CCR 1404-1 | SOS Tracking No.: TBD |


## RULEMAKING PACKET

| | |
|---|---|
| Reason for the proposed rule or amendment(s): | Compliance with Federal and/or State laws, mandates, or guidelines<br>If there are "Multiple/Other" reasons, please explain: |
| Emergency Rule Justification (if applicable) | N/A |
| Provide a description of the proposed rule or amendment(s) that is clearly and simply stated, and what CDEC intends to accomplish: | Section 26.5-4-205, C.R.S. requires the Department to establish Quality Standards for the Colorado Universal Preschool Program (Program) through rulemaking to ensure all participating children receive high-quality publicly-funded preschool services. In the current Quality Standards, section 4.110 outlines programmatic preferences that Program providers may utilize during the matching process to ensure the provider can serve its intended community. The preferences were created because the software used to match children to Program providers relies on a deferred-acceptance algorithm that does not account for the many pre-existing relationships between the providers and the communities they serve.<br><br>The first of these programmatic preferences allows faith-based providers to prioritize members of its congregation; however, any provider utilizing this preference (or any of the other preferences) must still provide, as required by statute, "an equal opportunity to enroll and receive preschool services regardless of race, ethnicity, religious affiliation, sexual orientation, gender identity, lack of housing, income level, or disability, as such characteristics and circumstances apply to the child or the child's family." § 26.5-4-205(2)(b), C.R.S.; 8 CCR 1404-1 § 4.110(B). While the Department did not intend the congregation preference to permit any actions in conflict with section 26.5-4-205(2)(b), C.R.S., a federal district court judge found that because the preference is available specifically to faith-based providers, it permits distinctions based on those affiliated with faith-based providers, and thus permits distinctions based on religious affiliation. *See St. Mary Cath. Par. in Littleton v. Roy*, 2024 WL 3160324 at *32 (D. Colo. June 4, 2024).<br><br>This proposed amendment seeks to repeal the congregation preference in section 4.110(A)(1) and the definition of "congregation" in section 4.103(L) because the Department is committed to complying with the statutory requirements to ensure that all children have an equal opportunity to enroll in and receive quality publicly-funded preschool services regardless of religious affiliation or any other protected-class status. All Program providers, including faith-based providers, will remain eligible to utilize any of the remaining preferences at section 4.110(A) that are applicable to them |

EXHIBIT 1083

| | |
|---|---|
| | (e.g. continuity-of-care, siblings, children of employees), so long as they ensure an equal opportunity to enroll and receive preschool services regardless of race, ethnicity, religious affiliation, sexual orientation, gender identity, lack of housing, income level, or disability, as such characteristics and circumstances apply to the child or the child's family. § 26.5-4-205(2)(b), C.R.S.; 8 CCR 1404-1 § 4.110(B). All Program providers can maintain ongoing relationships and maintain specialized areas of focus, so long as these relationships and specialities are not defined by characteristics the statute protects from discrimination.<br><br>Some additional technical edits were made to correct capitalization errors and to renumber. |
| Statutory Authority: (Include Federal Authority, if applicable) | Sections 26.5-1-105(1), 26.5-4-204(4)(a), 26.5-4-205(1), (2), and 24-4-103, C.R.S. |
| Does the proposed rule or amendment(s) impact other State Agencies or Tribal Communities? | ☐ Yes ☑ No<br>If Yes, identify the State Agency and/or Tribal Community and describe collaboration efforts: |
| Does the proposed rule or amendment(s) have impacts or create mandates on counties or other governmental entities? (e.g., budgetary requirements or administrative burdens) | ☐ Yes ☑ No<br>If Yes, provide description: |
| Effective Date(s) of proposed rule or amendment(s): (<u>E</u>mergency/<u>P</u>ermanent) | ☑ Mandatory ☐ Discretionary<br>(E) Effective Date: N/A (P) Effective Date: 01/14/2025<br>(E) Termination Date: N/A |
| Is the proposed rule or amendment(s) included on the Regulatory Agenda? | ☐ Yes ☑ No<br>If no, please explain: The proposed amendments are not included on the Regulatory Agenda because the amendments are necessary after a recent court ruling. |
| Does the proposed rule or amendment(s) conflict, or are there inconsistencies | ☐ Yes ☑ No<br>If Yes, please explain: |

| | |
|---|---|
| with other provisions of law? | |
| Does the proposed rule or amendment(s) create duplication or overlapping of other rules or regulations? | ☐ Yes ☑ No<br>If Yes, explain why: |
| Does the proposed rule or amendment(s) include material that is incorporated by reference[1]? | ☐ Yes ☑ No<br>If Yes, provide source: |
| Does the proposed rule or amendment(s) align with the department's rulemaking objectives?<br><br>Choose all that apply. | ☐ Reduce the administrative burden on families and providers accessing, implementing, or providing programs and/or services.<br>☐ Decrease duplication and conflicts with implementing programs and providing services.<br>☑ Increase equity in access and outcomes to programs and services for children and families.<br>☐ Increase administrative efficiencies among programs and services provided by the department.<br>☐ Ensure that rules are coordinated across programs and services so that programs are implemented and services are provided with improved ease of access, quality of family/provider experience, and ease of implementation by state, local, and tribal agencies. |

**Rulemaking Proceedings**

| | |
|---|---|
| Type of Rulemaking: Emergency or Permanent[2] [Permanent Tier I or Tier II] | Permanent<br><br>Tier I |
| Stakeholder Engagement: | List of activities and dates: |

[1] Incorporation by Reference is all or any part of a code, standard, guideline, or rule that has been adopted by an agency of the United States, this state, or another state, or adopted or published by a nationally recognized organization or association, pursuant to section 24-4-103(12.5), C.R.S.

[2] Tier I is used for proposed rule or amendment(s) that have substantive changes, require substantial stakeholder engagement, and will be considered at two Public Rulemaking Hearings (PRH). The first PRH is held for discussion, and the second PRH is held to consider adoption. Tier II is used for proposed rule or amendment(s) that include technical changes, do not require substantial stakeholder engagement, and will be considered at only one Public Rulemaking Hearing (PRH) for adoption.

| | |
|---|---|
| Public Folder: Proposed rule, webinar recordings/transcripts, written stakeholder comments, material from small/large focus groups, written petitions/requests, surveys, data, research, reports, published papers, and documents used to develop the proposed rule or amendment(s). | Public folder containing all rulemaking material:<br><br>https://drive.google.com/drive/u/0/folders/1zYiR3BiK1ZVxJgutMUykNCxM6zcbvPJ- |
| Assistant Attorney General Review: | 09/12/2024 - 10/04/2024 |
| RAC County Subcommittee Review Date (if required): | N/A |
| Rules Advisory Council (RAC) Review Date: | 10/10/2024 |
| Public Rulemaking Hearing Date(s): [Discussion/Adoption] | 10/24/2024 (Discussion)<br><br>11/21/2024 (Adoption) |

**Regulatory and Cost Benefit Analysis**

1. **Community Impact: Provide a description of the stakeholders that will be affected by the proposed rule or amendment(s), and identify which stakeholders will bear the costs, and those who will benefit. How will the proposed rule or amendment(s) impact particular populations, such as those experiencing poverty, immigrant/refugee communities, non-English speakers, and rural communities?**

   The proposed rule revisions will ensure that all Program providers provide “an equal opportunity to enroll and receive preschool services regardless of race, ethnicity, religious affiliation, sexual orientation, gender identity, lack of housing, income level, or disability, as such characteristics and circumstances apply to the child or the child’s family.” § 26.5-4-205(2)(b), C.R.S.

   Research shows that children who have access to and attend high-quality preschool have higher levels of educational attainment and are less likely to experience poverty or enter the criminal justice system. Furthermore, research suggests that children from low-income families experience the greatest gains from high-quality preschool.

2. **Quality and Quantity: Provide a description of the probable quantitative and qualitative impact on persons affected by the proposed rule or amendment(s), and comparison of the probable costs and benefits of implementation versus inaction. What are the short- and long-term consequences of the proposed rule or amendment(s)?**

Research shows that children who attend high-quality preschool have higher levels of educational attainment and are less likely to experience poverty or enter the criminal justice system. Furthermore, research suggests that children from low-income families experience the greatest gains from high-quality preschool. All Program providers are required to follow the Quality Standards rules, which would impact more than 39,000 four-year-olds.

Faith-based providers can continue to participate in the Program and will remain eligible to utilize any of the remaining preferences at section 4.110(A) that are applicable to them (e.g. continuity-of-care, siblings, children of employees, specific competencies/interests), so long as they, like any other provider, ensure an equal opportunity to enroll and receive preschool services regardless of race, ethnicity, religious affiliation, sexual orientation, gender identity, lack of housing, income level, or disability, as such characteristics and circumstances apply to the child or the child's family. § 26.5-4-205(2)(b), C.R.S.; 8 CCR 1404-1 § 4.110(B).

**3. Potential Economic Benefits/Disadvantages: What are the anticipated economic benefits of the proposed rule or amendment(s), such as: economic growth, creation of new jobs, and/or increased economic competitiveness? Are there any adverse effects on the economy, consumers, private markets, small businesses, job creation, and economic competitiveness?**

Research has shown that every $1.00 spent on high-quality early childhood education contributes $2.25 to Colorado's economy.[3] Randomized control trials have demonstrated that a high-quality preschool program returns to society between about $7 and $12 for each $1 invested.[4]

**4. Fiscal Impacts: What are the anticipated direct and indirect costs for the state/department to implement, administer, and enforce the proposed rule or amendment(s)? What are the direct and indirect costs to each of the following entities to comply with the proposed rule or amendment(s)? For each, describe the impact or indicate "not applicable."**

| | |
|---|---|
| Department | Not applicable |
| Local Governments/ Counties | Not applicable |
| Providers | Not applicable |
| Community Partners (e.g., School Districts, Early Childhood Councils, etc.) | Not applicable |
| Other State Agencies | Not applicable |
| Tribal Communities | Not applicable |

3 Butler Institute for Families Graduate School of Social Work University of Denver and Brodsky Research and Consulting, "Bearing the Cost of Early Care and Education in Colorado: An Economic Analysis," (September 2017).

4 Heckman, J. J., Moon, S. H., Pinto, R., Savelyev, P. A., & Yavitz, A. (2010). The Rate of Return to the High/Scope Perry Preschool Program. Journal of Public Economics, 94(1-2), 114-128.

5. **Evaluation: How will implementation of the proposed rule or amendment(s) be monitored and evaluated? Please include information about measures and indicators that CDEC will utilize, including information on specific populations (identified above).**

The Universal Preschool Program is required by statute to be evaluated through an independent evaluation (section 26.5-4-207, C.R.S.). The Department is required to contract with an independent evaluator to measure immediate and long-term child outcomes and provide recommendations to improve teaching and learning, assess professional development, improve teacher-child interactions, and inform a continuous improvement process. The Department is required to share this information through the annual SMART Act hearing, beginning in January 2025 (section 26.5-4-210, C.R.S.). This evaluation will include an evaluation of the Quality Standards.

Local Coordinating Organizations (LCO's) will continue to monitor the use of all programmatic preferences to ensure that providers utilizing any of the remaining preferences at section 4.110(A) that are applicable to them provide an equal opportunity to enroll and receive preschool services regardless of race, ethnicity, religious affiliation, sexual orientation, gender identity, lack of housing, income level, or disability, as such characteristics and circumstances apply to the child or the child's family. § 26.5-4-205(2)(b), C.R.S.; 8 CCR 1404-1 § 4.110(B).

6. **Comparative Analysis: Provide at least two alternatives to the proposed rule or amendment(s) that can be identified, including the costs and benefits of pursuing each of the alternatives.**

While the Department did not intend the congregation preference to permit any actions in conflict with section 26.5-4-205(2)(b), C.R.S., a federal district court judge found that because the preference is available specifically to faith-based providers, it permits distinctions based on those affiliated with faith-based providers, and thus permits distinctions based on religious affiliation. *See St. Mary Cath. Par. in Littleton v. Roy*, 2024 WL 3160324 at *32 (D. Colo. June 4, 2024). Because of this finding, there are no alternatives to the proposed rule.

7. **Comparative Analysis: Are there less costly or less intrusive methods for achieving the purpose of the proposed rule or amendment(s)? Explain why those options were rejected.**

While the Department did not intend the congregation preference to permit any actions in conflict with section 26.5-4-205(2)(b), C.R.S., a federal district court judge found that because the preference is available specifically to faith-based providers, it permits distinctions based on those affiliated with faith-based providers, and thus permits distinctions based on religious affiliation. *See St. Mary Cath. Par. in Littleton v. Roy*, 2024 WL 3160324 at *32 (D. Colo. June 4, 2024). Because of this finding, there are no alternatives to the proposed rule.

**DEPARTMENT OF EARLY CHILDHOOD**

**Colorado Universal Preschool Program**

**UNIVERSAL PRESCHOOL PROGRAM RULES AND REGULATIONS**

**8 CCR 1404-1**

*[Editor's Notes follow the text of the rules at the end of this CCR Document.]*

---

…

## 4.103 DEFINITIONS

…

~~L. "Congregation" means members of the community that the faith-based provider serves as the faith-based provider defines that community.~~

L~~M~~. "Cooperative Preschool Provider" means an eligible preschool provider which requires participating families to be meaningfully involved in the operation of the cooperative and which is at least substantially operated, maintained, or administered by participating families.

M~~N~~. "Department" means …

N~~O~~. "ECEA" means the "Exceptional Children's Educational Act"…

O~~P~~. "Early childhood mental health program" means …

P~~Q~~. "Early learning and assessment approach" means …

Q~~R~~. "Eligible child" means …

R~~S~~. "Eligible preschool provider" means …

S~~T~~. "Equally qualified provider" means …

T~~U~~. "Federal Poverty Level" (FPL) or "Federal Poverty Guidelines" (FPG) refers to …

U~~V~~. "Foster care home" has the same meaning as …

V~~W~~. "Full-day" means …

W~~X~~. "Half-day" means …

X~~Y~~. "Head Start program" means …

Y~~Z~~. "IDEA" means …

Z~~AA~~. "Individualized Education Program" or "IEP" means …

AA~~BB~~. "Instructional supervisor" means …

BB~~CC~~. "Lead teacher" means …

CC~~DD~~. "Low-income" means …

DD~~EE~~. "Multilingual" means …

EE~~FF~~. "Noncertified kinship care" means …

FF~~GG~~. "Parent" has the same meaning as …

GG~~HH~~. "Part-time or slot" means …

HH~~II~~. "Primary provider" means …

II~~JJ~~. "Preschool provider" means …

JJ~~KK~~. "Preschool services" means …

KK~~LL~~. "Qualifying factor" means …

LL~~MM~~. "Qualified substitute" means …

MM~~NN~~. "Resource Bank" means …

NN~~OO~~. "School District" means …

OO~~PP~~. "School year" means …

PP~~QQ~~. "Short term basis" means …

QQ~~RR~~. "Sibling" means …

RR~~SS~~. "Staff aide" means …

SS~~TT~~. "Substitute" means …

TT~~UU~~. "Universal preschool services" means …

…

## 4.108 PRESCHOOL PROVIDER FUNDING FOR CHILDREN THREE (3) AND FOUR (4) YEARS OF AGE

…

### H. Per-Child Rate Funding Formula...

1. **PKC (pre-k costs)** means the base cost of providing high quality preschool services based on unique characteristics of provider settings and the families/children they serve, recognized best practices and evidence-based standards, pursuant to sections 26.5-4-208(1)(a~~A~~)(I) and 26.5-4-205(2), C.R.S.

…

4. **CL (cost of living)** means a cost-of-living adjustment determined at the county level to reflect evolving local economic realities and support recruitment and retention of a high-quality workforce, as required by section 26.5-4-208(1)(a~~A~~)(III), C.R.S.

5. **LIC (low income by county)** means the parameter determined at the county level to account for the identification of children in low-income families, as defined by rule section 4.105(A) and pursuant to section 26.5-4-208(1)(a~~A~~)(IV), C.R.S.

6. **GF (geographic factor)** means the factor that adjusts for regional differences and circumstances unique to rural communities that result in variations in the cost of providing preschool services, which may include difficulties in achieving economies of scale in rural areas and in recruiting and retaining preschool educators, as required by section 26.5-4-208(1)(a~~A~~)(III), C.R.S.

7. **QE (quality enhancement)** means the component that accounts for the cost of providing professional development activities and salary incentives to teachers and paraprofessionals pursuant to sections 26.5-4-208(1)(a~~A~~)(I) and 26.5-4-205(2), C.R.S.

...

## 4.109 GENERAL REQUIREMENTS AND PROVISIONS

…

F. Educating Children with Disabilities.

…

2. Eligible preschool providers educating children with disabilities shall ensure compliance with the applicable provisions of the "Individuals with Disabilities Education Act" (IDEA), as incorporated by reference in rule section 4.103(Y~~Z~~).

…

## 4.110 PROVIDER MATCHING CRITERIA

A. Eligible preschool providers may utilize the following programmatic preferences to the deferred acceptance algorithm component of the matching process:

~~1. Faith-based providers granting preference to members of their congregation;~~

1~~2~~. Cooperative preschool providers requiring participation in the cooperative;

2~~3~~. School districts maintaining enrollment consistent with their established boundaries;

3~~4~~. Participating preschool providers reserving placements for a student(s) with an Individualized Education Program (IEP) to ensure conformity with obligations incurred pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. section 1400 (2004), or the Exceptional Children's Education Act, Article 20 of Title 22, C.R.S.;

4~~5~~. Head Start programs' adhering to any applicable federal law requirements including eligibility requirements;

7~~6~~. Participating preschool providers granting preference to an eligible child of one (1) of their employees;

6~~7~~. Participating preschool providers granting preference to an eligible child to ensure continuity-of-care for that child;

7~~8~~. Participating preschool providers granting preference to an eligible child to keep siblings similarly located;

8~~9~~. Participating preschool providers granting preference to an eligible child who is multilingual, to ensure proper delivery of services to that child.

9~~10~~. Participating preschool providers may grant preference to an eligible child based: on the child and/or family being a part of a specific community; having specific competencies or interests; having a specific relationship to the provider, provider's employees, students, or their families; receiving specific public assistance benefits; or participating in a specific activity. Participating preschool providers seeking to utilize this preference, must ensure:

a. That the specific community, competencies or interests, relationship, public assistance benefit, or activity being required of children and/or families who attend, is a requirement of all participating children and/or families.

b. That implementation of requiring the specific community, competencies or interests, relationship, public assistance benefit, or activity does not conflict with any other provision of the Colorado Universal Preschool Program statutes at sections 26.5-4-201 through 26.5-4-211, C.R.S., nor with any other applicable law or regulation.

c. Examples of approved preferences include, but are not limited to: participating preschool providers who require a focus in a certain knowledge area (such as science, technology, engineering, and math ("STEM")); providers who serve families with a family member who works or attends school at a specific site(s) or location(s); providers who serve families within a specific geographical catchment area; providers who require a certain amount of volunteering or participation by the participating family; providers who require certain vaccinations for the health and safety of its staff and students; and providers who serve families who are receiving a specific public assistance benefit(s) such as housing assistance.

B. In utilizing these programmatic preferences, eligible preschool providers must still comply with rule section 4.109(B).

…

---

**Editor's Notes**

**History**

New rule emer. rule eff. 09/29/2022.

Rules 4.101, 4.104, 4.105 emer. rules eff. 11/21/2022.

Rules 4.100-4.103 eff. 01/14/2023.

Rules 4.101, 4.104, 4.105 eff. 03/17/2023.

Rule 4.105 emer. rule eff. 06/23/2023.

Rule 4.105 eff. 09/30/2023.

Entire rule emer. rule eff. 01/22/2024.

Entire rule eff. 04/14/2024.

Rules 4.103, 4.109-4.114 eff. 05/15/2024.

Rules 4.103, 4.107 B.2, 4.108 emer. rules eff. 05/16/2024.

Rules 4.103, 4.107 B.2, 4.108 eff. 08/30/2024.